THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES DAVID CASTRO, Defendant-Appellant.

(No. 54915;

First District—September 17, 1971.

*Rehearing denied October 15, 1971.*

Gerald W. Getty, Public Defender of Cook County, of Chicago, (Mary Cahill and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Howard V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Michael J. Goldstein, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court.

A jury found defendant guilty of unlawfully selling a narcotic drug in violation of Ill. Rev. Stat. 1967, ch. 38, par. 22—3.[1] He was sentenced to a term of ten to twenty years. Defendant appealed directly to the Supreme Court of Illinois pursuant to Supreme Court Rule 603 which provides for direct review of final judgments of circuit courts in cases involving a constitutional question. The Supreme Court determined that it had no jurisdiction of the case on direct appeal and transferred the

---

[1] This statute provides:

It is unlawful for any person to manufacture, possess, have under his control, sell, prescribe, administer, dispense or compound any narcotic drug, except as authorized in this Act.

The Illinois Criminal Code also states in Ill. Rev. Stat. 1967, ch. 38, par. 4—3(a):

A person is not guilty of an offense, other than an offense which involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4—4 through 4—7.

The Code, in par. 4—5, goes on to define "knowledge":

A person knows, or acts knowingly or with knowledge of:

(a) The nature or attendant circumstances of his conduct, described by the statute defining the offense, when he is consciously aware that his conduct is of such nature or that such circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such fact exists.

case to this court. On appeal defendant contends: (1) that the trial court erred in failing to instinct the jury that knowledge is an essential element of the crime charged and (2) that the trial court erred in failing to instruct the jury on the defense of entrapment.

The evidence presented by the State in its case in chief may be summarized. On March 29, 1968, John Peoples, a police officer working as an undercover agent, was introduced to defendant by Tony Spagnolli, an informer who had been used by the police in other cases. Peoples met defendant again on April 1st and on April 2nd defendant telephoned Peoples asking him "Are you ready to do business for an ounce of heroin?" Peoples replied indicating that he would have to make some contacts in order to raise the necessary money. On the morning of April 4, 1968, defendant again telephoned Peoples saying "My connection, Pinky, is ready to do business. Could you do business with us?" A meeting was arranged for that afternoon at 31st and Halsted Streets. Peoples, with Agent Jackson from the Federal Bureau of Narcotics, drove to 31st and Halsted where defendant was awaiting their arrival. Jackson was introduced to defendant as "Jimmie Jones, the man who handles the money." Defendant after seeing the money, as per his request, said "O.K., let's go." After driving around for a while, during which time defendant placed a telephone call, the trio returned to 31st and Halsted. There defendant entered a telephone booth and placed another telephone call. During this conversation the agents overheard the name "Pinky" mentioned.

Defendant returned to the car and instructed Peoples to drive to the Brown Bottle Restaurant. While en route defendant was asked whether "Pinky" was the big narcotics dealer on the west side. Defendant's response was "Yes, he has the best heroin in town." Upon arrival at the Brown Bottle they entered and sat in a booth. Shortly thereafter two other federal narcotics agents, Cruz and Jordan, entered and sat nearby. These agents had been following the trio in accordance with a previous arrangement with Peoples and Jackson. Defendant said "Pinky should have the stuff ready by now," and left to make a telephone call. Upon returning he said, "I'll be right back in a few minutes. I'm going to meet Pinky." Defendant left the Brown Bottle and walked down the street a short distance to a point where he met "Pinky". The two then went into a passageway between two buildings where defendant received an aluminum foil packet. Defendant then walked back to the Brown Bottle while "Pinky" went into a nearby dry cleaning shop where he was subsequently arrested. On defendant's return to the Brown Bottle he said "I got the package.", placed an aluminum foil packet on the table and said "I want the money." As defendant placed

his hands on the money Cruz and Jackson placed defendant under arrest. Expert testimony established the contents of the packet to be heroin.

The testimony of the defendant may be summarized. At 8:00 A.M. on April 4, 1968, Tony Spagnolli, with whom defendant worked at a cartage company, telephoned and told him that later that day, during the afternoon, he was going to repay defendant the $125 he owed to defendant. Pursuant to Spagnolli's request defendant telephoned Peoples, who was known to defendant only as "Jay", to tell him that Spagnolli did not have any money for Peoples. Later, defendant again telephoned Peoples. During that conversation Peoples said he would meet defendant at 31st and Halsted Streets where, later that afternoon, defendant met Peoples and "Jimmie Jones". They drove for a while only to return to 31st and Halsted where defendant made one of several telephone calls to his co-indictee, Lawrence Guitierez, known as "Pinky" whose telephone number was given to defendant earlier that day by Spagnolli. "Pinky" told defendant to meet him at the Brown Bottle but did not say why. Defendant, "Jay" and "Jimmie Jones" proceeded to the Brown Bottle where defendant again telephoned "Pinky" who told defendant to meet him on the street. Defendant left the Brown Bottle, met "Pinky" and asked for his money. "Pinky" said defendant should take a package to Peoples and get the money from him. Defendant asked what was in the package but "Pinky" would not tell him. Defendant returned to the Brown Bottle where, after placing the packet on the table, he was arrested. He never saw the money. Defendant knew "Pinky" for two and one half years, but did not know of this narcotics dealings nor did defendant sell narcotics to Peoples on previous occasions or talk of narcotics with Peoples on April 4, 1968.

The State, in rebuttal, presented further testimony by Peoples that on two previous occasions, March 29, 1968, and April 1, 1968, he purchased heroin from defendant. Both sales were suggested by defendant and after the conclusion of the second sale defendant suggested a third, larger sale. "Pinky" was to be the supplier of the heroin for this third sale.

In surrebuttal defendant testified that on March 29, 1968, he received $100 from Spagnolli in partial payment of a $300 debt. At that time Peoples was nearby. On April 1, 1968, defendant received from Spagnolli an additional $75 also in partial repayment of the debt. Peoples was present at this exchange also. Defendant denied that on either March 29 or April 1, 1968, he had transferred a packet to anyone or sold any narcotics.

*Opinion*

■■ We agree with defendant's first contention that the trial court

erred in failing to instruct the jury that knowledge on the part of defendant was an essential element of the offense charge.[2]

■■ Both the State and defense concede that proof of knowledge beyond a reasonable doubt is a requirement for conviction for unlawful sale of narcotics. (See footnote 1, *supra*); *cf. People v. Galloway* (1963), 28 Ill.2d 355, 358. They differ, however, as to whether or not the jury should have been instructed that it must find defendant had knowledge of the nature of the substance contained in the packet in order to convict him. This court has stated previously in *People v. Lewis* (1969), 112 Ill.App.2d, 1, 11 that:

> "It was a fundamental responsibility of the court to see to it that the jury not be permitted to deliberate defendant's guilt or innocence of the crime charged without being told the essential characteristics of that crime."

The trial court may not allow the jury to conduct its deliberation in an atmosphere of conjecture and speculation as to what act or acts constitute the crime charged. See *People v. Davis* (1966), 74 Ill.App.2d 450, 456.

■■ The State urges us to follow the decision in *People v. Truelock* (1966), 35 Ill.2d 189 and the cases following it. The reasoning of those decisions, however, is not appropriate in the instant case. In each of those cases it was uncontroverted that defendant had knowledge of the nature of the substance in his possession. The Supreme Court held in *Truelock* that although the trial court erred in failing to instruct the jury that knowledge on the part of defendant is essential to a finding of guilty for unlawful possession of a narcotic drug, that error was not grounds for reversal because "the evidence of defendant's guilt was so clear and convincing that the jury could not reasonably have found him not guilty."[3] In the present case, however, the evidence concerning defendant's mental state is not of such a clear and convincing character.

---

[2] The only instructions as to the substantive nature of the crime were tendered by the State. They read as follows:

State's instruction number 1, given as modified:

The Court instructs the jury that it is unlawful for any person not authorized by law to sell any narcotic drug.

State's instruction number 2, given over objection:

This Court instructs the jury that under Chapter 38, Section 22-2-11 of the Illinois Revised Statute, 1967, "Sale" means and includes traffic in, barter, exchange, or gift, or offer therefor, and such transaction made by any person whether as principal, proprietor, broker, agent, servant or employee.

[3] The defendant in *Truelock* made several incriminating remarks admitting that he knew of the presence of heroin in the apartment in which he was arrested. He also was in no position to deny knowledge of the contents of a tinfoil package found on his person or other heroin found in his apartment because the arresting officers observed him sitting at a table mixing white powder.

A comparison of the evidence produced by the prosecution and the defense reveals that the major fact question raised by the defense, which the jury had to decide, was whether or not defendant knew the nature of the substance in the packet. The State placed in evidence many statements by defendant wherein he mentioned "heroin" in reference to the package he delivered to Peoples on April 4, 1968. The State also presented evidence purporting to show that on previous occasions defendant sold heroin to Peoples. Defense evidence on the other hand presented a picture of defendant as a delivery man not knowing the nature of the contents of the packet he was to deliver, and only being interested in collecting the $125 due him in payment of a debt. Thus, defendant's knowledge of the nature of the contents of the packet was clearly a question of fact for the jury and it was within the province of the jury to determine the credibility of the witnesses in deciding that issue. The police witness testified to previous knowledgeable heroin transactions with defendant, but these were denied by defendant, and there is no indication that prosecutions were ever initiated in regard thereto. The jury therefore should have been given an instruction covering all elements of the crime, including knowledge, and failure thereof was error on the part of the trial court. By the only instruction given as to the elements of the crime the court, in effect, impermissibly instructed the jury to find against defendant on the major issue raised in his defense.

We cannot conclude beyond a reasonable doubt that the court's error in this regard could not have contributed to the result, and this we would have to do under the command of *Chapman v. California* (1967), 386 U.S. 18, 22 and subsequent cases which lay down the limits of the harmless error doctrine. We must therefore reverse the conviction of defendant and remand the cause for a new trial.

■■ Although our decision in this case makes it unnecessary for us to consider the other contention raised by defendant; it is appropriate, however, to point out another error in the instructions. The State's instruction number one (See footnote 2, *supra*) allowed the jury to determine what persons are authorized by law to sell narcotic drugs. This was held improper in *People v. Lewis* (1969), 112 Ill.App.2d 1, 11 and should be avoided on retrial of this case.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

ENGLISH, P.J. and DRUCKER, J., concur.