THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HUGH R. SIMMS, Defendant-Appellant.

Second District (2nd Division)    No. 75-94

Opinion filed June 3, 1976.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Edward N. Morris and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendant was indicted for two counts of aggravated battery and one count of attempt murder. After a jury trial, defendant was convicted of both counts of aggravated battery and was sentenced to serve a 3- to 9-year term of imprisonment.

The evidence revealed that at approximately 6 p.m. on May 25, 1973, Frank Knutell, a Lake County deputy sheriff, driving an unmarked car, arrived at defendant's Zion home to serve defendant with a summons, an injunction writ and a motion notice. Dressed in a business suit, Knutell went to defendant's home and knocked on the front door. Receiving no response, he went to the side entrance which had a glass-panelled storm door and a second (inner) door. Located on this inner door was a small piece of paper on which was printed, in part, the second and fourth amendments to the Federal Constitution and a warning that any officer who entered the home without a proper warrant would be treated as an intruder. Knutell knocked at this door. According to his testimony, when defendant's wife appeared he told her he was from the sheriff's office and wanted to speak with her husband, but she responded that her husband

was in a belligerent mood and that he should come back the next day.

Defendant then came to the door and Knutell asked to speak with him. Defendant testified that Knutell did not identify himself or his business but asked to come into the house to talk to him. Knutell admitted that during this initial confrontation he never displayed any of the papers he intended to serve on defendant. Defendant told Knutell that he did not want to speak with him and closed the door, an action characterized by Knutell as a "slam." Knutell went back to his car and radioed the Zion Police Department for assistance.

Within a short period of time uniformed Officer Peter Reinier of the Zion Police Department arrived at the defendant's home and, accompanied by Knutell, went to the side door. Defendant came to the door and, according to his testimony, asked the uniformed officer the nature of his business. The officer responded by telling the defendant he wanted to come into his home to speak with him. Defendant slammed the storm door and testified that he locked it. While the latter representation was corroborated by the testimony of his son, who was present at the time, Officer Reinier disagreed, stating that defendant did not lock the door but only pulled it closed.

As defendant returned to the kitchen, his son heard him utter an obscenity and state that the only way the parties outside his home would gain entrance would be "over his dead body." Meanwhile, the police officer entered the home through the side door. His method of entry was contested, for while he testified that he merely opened both doors of the side entrance without the use of force, defendant stated that while returning to the kitchen he heard what sounded like the storm door being kicked or "torn off." Defendant then ran through the kitchen and dining room and into the bedroom. Testimony concerning the violent entry was corroborated by defendant's next door neighbor, who said he witnessed the uniformed police officer conversing with defendant at the door and, from a distance of approximately 25 feet, heard what sounded like the door being "jerked off." Defendant's wife and son both testified that before the incident the storm door was in proper working condition but after the incident a broken window pane had to be replaced and the door's latch repaired. In an effort to rebut the inferences to be drawn from this testimony, the State called patrolman Franklin Brown of the Zion Police Department. Brown stated that he arrived at the defendant's home in answer to a reported shooting, went to the side door and, using his shotgun, broke the storm door's window pane in order to have a better view of the inside of the home. This testimony was corroborated by another Zion Police officer, Mark Scheribel, who said he saw Officer Brown break the window.

Officer Reinier entered the home, walked up three stairs into the

kitchen and proceeded through the kitchen to the dining room where he saw defendant's wife and son. When they saw officer Reinier, they left the dining room and exited the home through the front door. Reinier testified that without his gun drawn he went to a set of closed double doors, pushed the right door open, and saw defendant standing in the bedroom; that he asked defendant to come out of the bedroom as the deputy sheriff had papers to serve upon him; that defendant did not reply but instead raised his hand, revealing a gun, and fired a shot which hit the officer in the stomach. The force of the bullet drove Officer Reinier back 5 or 6 feet. He pivoted away, and as he reached for his weapon, he was hit in the shoulder by another of defendant's shots. He fell to the ground whereupon defendant approached him and stated that he was going to kill the officer. The officer then fired his pistol, hitting defendant in the leg and defendant was thereafter apprehended.

Defendant's version of this portion of the incident materially differed from that offered by Officer Reinier. Defendant stated that after he heard the violent entry he ran to the bedroom, opened a locker in his closet and removed a pistol; that during this time his eyeglasses fell off which caused a marked decrease in his visual acuity; that he heard shots and then saw the bedroom door open slightly. Although he could not see very well, he fired an estimated four to six rounds of ammunition into the dining room area, and as he went into that room to investigate he was shot in the leg. He was then apprehended and given medical assistance for his wound. He denied ever seeing Officer Reinier or exchanging conversation with him during the confrontation.

On appeal, defendant first claims that the jury was improperly instructed because the issue instruction submitted did not contain the proposition that the State must not only prove all of the elements of aggravated battery, but prove beyond a reasonable doubt that the force defendant used was not justified. (See IPI Criminal No. 25.05.) The State does not contest that such an instruction in this case would have been proper, but argues that this contention was waived when, at trial, defendant failed to tender the desired instruction.

■■ If a defendant wishes an instruction to be given he must tender the instruction or, on appeal, he waives any claim to error unless the instructional defect is so substantial that the interests of justice require that the error be corrected. Examples of this type of substantial error are failure to instruct as to a necessary element of the crime charged (see *e.g.*, *People v. Castro*, 1 Ill. App. 3d 537, 540-41 (1971); *People v. Davis*, 74 Ill. App. 2d 450, 452-57 (1966)), and failure to instruct as to the "presumption of innocence and reasonable doubt." (See *People v. Donald*, 21 Ill. App. 3d 696, 699-701 (1974); *People v. French*, 5 Ill. App. 3d 908, 909 (1972).)

Since the jury in the present case was instructed as to the definitions of both "defense of person" and "defense of dwelling" (see IPI Criminal Nos. 24.06 and 24.07), and since the jury also received the issue instruction for the charge of aggravated battery (see IPI Criminal No. 11.08), we conclude that the jury was adequately instructed, that the error claimed was not substantial and that it was waived for the purpose of this appeal by defendant's failure to tender the preferred issue instruction at trial. See *People v. Robinson*, 21 Ill. App. 3d 343, 350 (1974); *People v. Meeks*, 11 Ill. App. 3d 973, 980-81 (1973). See also *People v. Wright*, 24 Ill. App. 3d 536, 540-41 (1974); *People v. Lewis*, 112 Ill. App. 2d 1, 12-13 (1969).

Defendant's next contention arises from an exchange which took place between the jury foreman and the court's bailiff. After the jury had retired, defendant heard the foreman ask the bailiff if defendant could be convicted of one charge and acquitted on the other. Defendant did not hear the bailiff's response but moved that he be allowed to interrogate the foreman concerning this discussion. The motion was denied by the trial judge who stated that he had questioned the bailiff and determined that the bailiff told the foreman he could not answer any questions but that the jury should read the instructions. Defendant argues that his motion for a hearing should have been granted.

The settled rule is that before a jury verdict will be set aside because of an unauthorized communication with the jury, it is necessary for the defendant to show prejudice. *People ex rel. Walker v. Pate*, 53 Ill. 2d 485, 505 (1973); *People v. Mills*, 40 Ill. 2d 4, 13-15 (1968). See also *People v. Tobe*, 49 Ill. 2d 538, 542-44 (1971); *People v. Callahan*, 16 Ill. App. 3d 1006, 1008 (1974).

■■ We would agree with defendant that in this situation a hearing would have been more proper for the purpose of determining the bailiff's response. Without this information it would be difficult for the defendant to make the necessary demonstration of prejudice. The trial court's failure to grant a hearing in this situation did not, however, constitute prejudicial error. The jury foreman's question was whether defendant could be convicted of one charge and acquitted on the other. Assuming, arguendo, that the bailiff answered the question directly, the only answer he could have given which would have prejudiced defendant would have been that only a conviction for both charges would be proper. The jury's verdict—a conviction on the charges of aggravated battery and acquittal on the attempt murder—clearly demonstrates that any response we might assume the bailiff made was not, if given, in fact prejudicial to defendant's case.

Defendant also complains that after the State had wrongfully withheld evidence from him, it was allowed to introduce that evidence at trial. Defendant filed a discovery motion in which he asked for the production

of any statement made by him. Although the State answered that it had no knowledge of any statement made by defendant, Officer Reinier testified during trial that after he had been shot the second time, defendant approached him and said he was going to kill him. In support of his position that the trial court erred in admitting this testimony into evidence, defendant relies on Supreme Court Rule 412(a)(ii) which states that upon defense counsel's written request, the State shall disclose "any written or recorded statements and the substance of any oral statements made by the accused or by a co-defendant, and a list of witnesses to the making and acknowledgement of such statements." Ill. Rev. Stat. 1973, ch. 110A, par. 412(a)(ii).

In *People v. Sanders,* 56 Ill. 2d 241, 252-53 (1974), an inculpatory statement made by the defendant to the police was admitted into evidence despite the fact that the State, in responding to defendant's discovery motion, denied having knowledge of any such statement. In rejecting defendant's claim that, based on the State's disclosure duty under Supreme Court Rule 412, the statement was inadmissible, the court pointed to the fact that at a pretrial hearing held one week before trial, defendant was made aware of the statement. The court concluded that under such circumstances defendant could not be heard to complain since he was not subject to surprise or prejudice by the statement's introduction.

■■ In the case before us, immediately after Officer Reinier testified at trial to defendant's threat, defense counsel moved for a mistrial on the basis that since the statement had not been disclosed during discovery its introduction into evidence subjected the defense to surprise. During the argument on the motion, however, defense counsel admitted that defendant's prior counsel in this case had been given a copy of the statement before trial and that both he and his client were fully aware of the statement prior to its introduction into evidence. Thus, here, as in *Sanders,* defendant cannot support his claim of error with the requisite showing of surprise or prejudice. Accordingly, we find no merit in his argument.

■■ Defendant's final contentions concern the judgment and sentence. He first urges this court to reduce his minimum sentence from 3 years to 1 year. While aggravated battery is a Class 3 felony (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(d)) for which a minimum term of one year's imprisonment would be proper (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1(c)(4)), the trial judge may set a longer minimum term if, in his discretion, the nature and circumstances of the offense and the history and character of the defendant so warrant. An exhibit introduced at trial indicating that defendant possessed a contemptuous attitude toward law enforcement, the conclusion of the presentence report that a recurrence of violence by

defendant was likely, and the fact that the crime was committed through the use of a deadly weapon, support the trial court's extension of the minimum term. We find that there was no abuse of discretion.

■■ Finally, defendant raises the fact that he was convicted on both counts of aggravated battery and argues that because both arose from the same transaction, a conviction on only one count may stand. On this point the State has confessed error and we agree.

We vacate the conviction as to one count of aggravated battery and affirm the conviction and sentence on the remaining count of aggravated battery.

Affirmed in part; vacated in part.

RECHENMACHER and DIXON, JJ., concur.