THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD SEATS, Defendant-Appellant.

First District (1st Division)   No. 77-1715

Opinion filed February 13, 1979.

Ralph Ruebner and Daniel Cummings, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, J. Jonathan Regunberg, and Paul C. Gridelli, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPBELL delivered the opinion of the court: ·

Following a jury trial the defendant, Ronald Seats, was found guilty of attempt murder and three counts of unlawful use of weapons. The defendant was sentenced to concurrent terms of from 20 to 50 years imprisonment for attempt murder and from 3 to 9 years imprisonment for the three counts of unlawful use of weapons.

On appeal the defendant, represented by the public defender, presents the following issues for review: (1) whether the admission of testimony regarding statements made by the defendant prior to the commission of any offense and testimony regarding ballistics tests was proper; (2) whether the jury instructions on the elements of the offense of attempt murder were proper; (3) whether the prosecutor's references in his opening statement and closing argument to a statement of the defendant implying a prior conviction were proper; and (4) whether the defendant was proven guilty beyond a reasonable doubt. The defendant also filed a supplemental pro se brief and further contends that the sentence of from 20 to 50 years for attempt murder is excessive.

We affirm. The following facts are pertinent to the disposition of this appeal.

At the trial the complaining witness, Officer John Campbell of the

Chicago Police Department, testified that at approximately 6:30 p.m. on December 29, 1975, he was talking with his long-time friend, John Seward, in the outer office of Seward's gasoline station located at 4300 South Wentworth Avenue, Chicago, Illinois, when the defendant entered. Officer Campbell knew the defendant and greeted him in the outer office by saying, "Ronnie, I'm glad to see you back." The defendant replied, "I'm back and I don't intend to go back to the penitentiary." After a pause he again addressed the officer with the statement, "Ain't no mother-fucking policeman going to send me back to the penitentiary." At the trial the defendant objected to the testimony of Officer Campbell with regards to these statements made by the defendant prior to the commission of any offense. The defendant also voiced some objection at the trial to the prosecutor's references in his opening statement and closing argument to these statements made by the defendant to Officer Campbell.

John Seward, the gasoline station's proprietor, was present during this exchange between the officer and the defendant. He testified in court that after the exchange of words between the two men he called Officer Campbell into the back office of the station and informed him that he thought the defendant was carrying a gun under his coat. The officer went back into the outer office and asked the defendant if he had a gun. The defendant said, "You damn right I have got one on me." Officer Campbell drew his service revolver and then proceeded to pat the defendant down, feeling a gun. He ordered the defendant to stand against the wall. The defendant resisted the officer's attempt to arrest him by backing out of the outer office until he backed up against Officer Campbell's parked squad car. As the officer began to call for assistance on his car radio the defendant advanced towards him.

Officer Campbell related that he then fired a shot in the air and the defendant jumped back before advancing towards the officer again. Once again the officer fired a shot in the air, causing the defendant to temporarily retreat. When the defendant advanced on the officer for the third time Campbell shot him in the leg at a distance of from 4 to 5 feet. After grabbing his leg, the defendant proceeded to run in a northerly direction with Officer Campbell giving chase. John Seward witnessed the foregoing events and corroborated Officer Campbell's testimony in court.

Officer Campbell further testified that as he fled the defendant reached under the right side of his coat. At this point the officer fired two additional shots at the defendant. The defendant fell and Officer Campbell approached him. The officer stated that when he was approximately 10 feet away, the defendant jumped up, pointed a sawed-off shotgun at his face and pulled the trigger. Campbell heard the gun click but it failed to discharge. As he continued to run, with the officer in

pursuit, the defendant turned and again pointed the shotgun at Officer Campbell this time at a distance of from 20 to 25 feet. Once again the officer heard the gun click but it failed to discharge.

Shortly thereafter the defendant was arrested at the home of his girl friend with whom he lived at 233 West 43rd Street, Chicago, Illinois. A loaded sawed-off shotgun was recovered by a police officer near the doorway to the room next to where the defendant was found. A shell with two indentations on its primer was recovered from the gun.

Police firearms examiner, Sergeant Vincent Lamoro, testified over the defendant's objection that he test fired the gun and determined that it was capable of being fired. He stated further that the indentation on the primer of the test fired shell was consistent in shape with those of the recovered shell. Both the shotgun and the recovered shell were admitted into evidence at the trial.

Mrs. Joan Benford, a daughter of the defendant's girl friend, testified that at 9 a.m. on the day of the arrest of the defendant, she saw the defendant at her mother's house. The defendant showed her the shotgun that was subsequently seized and stated that he "was going to kill someone." At 6 p.m. that same day, approximately 30 minutes before the defendant encountered Officer Campbell, the defendant again told Mrs. Benford that he "was going to kill somebody." Approximately 5 minutes later the defendant left the house after stopping briefly in the bedroom. Mrs. Benford then left her mother's house and began walking to her home when she heard shots coming from the direction of 43rd and Wentworth. She saw the defendant run into her mother's house with Officer Campbell in pursuit. Mrs. Benford saw what appeared to her to be the handle of the shotgun she had seen earlier sticking out of the defendant's pocket as he ran.

Based on the foregoing evidence, the jury found the defendant guilty of attempt murder and unlawful use of weapons. After a hearing in aggravation and mitigation, which disclosed eight prior convictions since 1971, the court sentenced the defendant to concurrent terms of from 20 to 50 years imprisonment for attempt murder and from 3 to 9 years for unlawful use of weapons. It is from this conviction that the defendant appeals.

■■ The defendant initially contends that the trial court erred in admitting into evidence testimony regarding statements made by the defendant immediately before the commission of any offense which implied his prior convictions and testimony as to subsequently conducted ballistics tests because this evidence allegedly had not been disclosed to the defendant prior to trial. The defendant argues that the admission of this testimony without affording him with proper pretrial discovery

surprised and prejudiced him and that on this basis the defendant should be granted a new trial. We disagree.

In response to the defendant's request for disclosure of any written or oral statements of the accused, the prosecution responded that none were known at the time, but that reference should be made to the preliminary hearing transcript. The prosecution also listed Officer Campbell as a potential prosecution witness in its response to the defendant's pretrial motion for discovery of persons that might be called as witnesses. Included in the preliminary hearing transcript was the testimony of Officer Campbell containing the defendant's statements: "Ain't no mother-fucking policeman going to send me back to the penitentiary." The defendant was given a copy of the preliminary hearing transcript in response to his discovery motion. Therefore, the defendant's statements were properly admitted to show his motive and intent. *People v. Donald* (1977), 56 Ill. App. 3d 538, 371 N.E.2d 1101; *People v. Simms* (1976), 38 Ill. App. 3d 703, 348 N.E.2d 478, *cert. denied* (1977), 429 U.S. 1106, 51 L. Ed. 2d 558, 97 S. Ct. 1138; *People v. Sanders* (1974), 56 Ill. 2d 241, 306 N.E.2d 865.

The defendant also objected to the prosecutor's references in his opening statement and closing argument to these statements of the defendant which implied prior convictions. Where the testimony concerning the defendant's statement which implied convictions of other offenses was properly admitted at the trial, the prosecutor's reference thereto in his opening statement and closing argument was entirely proper. (*People v. Palmer* (1970), 47 Ill. 2d 289, 265 N.E.2d 627, *cert. denied* (1971), 402 U.S. 931, 28 L. Ed. 2d 886, 91 S. Ct. 1532; *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.) We conclude that the admission of the statements implying prior convictions neither prejudiced the defendant nor denied his right to a fair trial.

The defendant next contends that the testimony relating to the ballistics tests was improperly admitted because the test fired shell was not produced prior to the trial. This contention is without merit. Police firearms examiner Sergeant Vincent Lamoro testified at the trial as to tests he conducted on the sawed-off shotgun which was seized from the defendant's girl friend's apartment. One of the tests which he conducted was a comparison between the shell found in the weapon which bore indentations on the primer indicating that it had been struck by the hammer and a shell that he thereafter test fired from the weapon. Sergeant Lamoro was properly allowed to testify in light of the fact that the defendant was in possession of the police report on the test fire and was further made aware of and given access to the shells through a proper answer to discovery. In response to the defendant's pretrial motion for

discovery of physical evidence, the prosecution, among other things, stated that it may introduce the shotgun and shotgun shells and that:

"All physical evidence listed will be made available for inspection as required by the Supreme Court Rules, i.e., at a reasonable time and date upon request."

The record discloses that not only was the defendant given access to the test-fire shell during the trial, but he was also given an opportunity to examine the shell prior to the court proceedings. In light of these facts the testimony of Sergeant Lamoro was properly admitted into evidence by the trial court. *People v. Curtis* (1977), 48 Ill. App. 3d 375, 362 N.E.2d 1319; *People v. Jones* (1973), 13 Ill. App. 3d 684, 301 N.E.2d 85.

The defendant next raises the issue of whether the jury instructions on the elements of the offense of attempt murder were erroneous.

The State concedes that the jury instructions were in error under the authority of *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, but goes on to argue that the error was harmless because of overwhelming evidence of the defendant's intent to kill. We agree that reversible error is not mandated in the instant case.

The jury instructions given in the present case as to the elements of attempt murder read in part that attempt murder is committed by one:

"* * * who kills an individual if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to that individual; or he knows that such acts create a strong probability of death or great bodily harm to that individual."

The defendant alleges that since the jury instructions for the offense of attempt murder is defined to include the phrases "intent to do great bodily harm" or knowledge of a "strong probability of death or great bodily harm," they allowed the jury to find the accused guilty of attempt murder when the evidence establishes only that he intended to cause great bodily harm short of death. It is important to note that the defendant failed to object to the instructions at the trial so as to preserve this issue for appellate review. We believe, however, that Supreme Court Rule 451(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(c)) requires that we review this issue in the interest of justice especially in light of the recent Supreme Court decision in *People v. Harris. People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793; *People v. Pearson* (1978), 67 Ill. App. 3d 300, 384 N.E.2d 1331.

*Harris* held that in a case involving attempt murder, an instruction that proof is required that a defendant knowingly and intentionally acted in a manner which created a strong probability of death or great bodily harm to another person is erroneous. It was the court's reasoning that such an instruction does not satisfy the intent element required for attempt

murder because it is not sufficient in proving this charge to show only that the accused intended to cause great bodily harm. In *Harris* the court found the error in the jury instructions to be grounds for reversal. The circumstances in the instant case are distinguishable.

The defendant in *Harris* fired a single shot at the rear window of a car in which the complainant was sitting in the process of driving away. There were no contemporaneous statements by the defendant indicating an intent or motive to kill. Also, the defendant did object to the instructions at trial even though he failed to renew the objections in his motion for a new trial.

In the supreme court's later decision on the subject in *People v. Tamayo* (1978), 73 Ill. 2d 304, 282 N.E.2d 227, the facts are also unclear as to whether the defendant formed a specific intent to kill the complainant. There were no contemporaneous statements by the defendant which would give rise to an inference that the defendant had formed an intent to kill. In addition, the court in *Tamayo* indicated that the error in the instructions was compounded by the prosecutor's statement in his closing argument that the evidence showed that the defendant acted with the intent to cause great bodily harm.

Unlike the facts in *Harris* and *Tamayo* the jury in the instant case may have found from the defendant's conduct and statements that he intended to kill Officer Campbell. This evidence negates the error in the jury instructions.

■ The law is well settled that intent is a state of mind, and if not admitted it can be shown by surrounding circumstances, and intent to take a life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209; *People v. Shields* (1955), 6 Ill. 2d 200, 127 N.E.2d 440.) Specific intent to take a human life is a material element of the offense of attempt murder, but the very fact of firing a gun at a person supports the conclusion that the person doing so acted with the intent to kill. *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 379 N.E.2d 641.

In *People v. Lindsay* this court held that the giving of attempt murder jury instructions that were improper under *Harris* was harmless error in the light of overwhelming evidence that the defendant acted with the specific intent to kill the victim. The circumstances surrounding the attempt murder in Lindsay are of a similar nature to those in the instant case. In *Lindsay* the evidence showed that the defendant shot the victim between the eyes at point blank range and then shot him in the back as he lay on the ground. The defendant's motive was to prevent the victim from testifying in court, which the court noted, was indicative of an intent to kill. The court held in *Lindsay* that the manner in which the victim was

shot, standing alone, showed that the act was done with no other intent other than the intent to kill.

■■ Such is the situation in the instant case where only the fortuity of the gun's misfiring saved Officer Campbell's life. We conclude, therefore, that the error in the jury instructions as to the elements of attempt murder was harmless error.

■■ The defendant further maintains that the evidence was not sufficient to prove him guilty of attempt murder beyond a reasonable doubt. It is his position that there were numerous inconsistencies with the testimony of key witnesses and a lack of convincing physical evidence giving rise to a reasonable doubt as to his guilt. The defendant did not take the stand to testify on his own behalf, and we do not agree with the above contention.

Only where the evidence is so improbable as to raise a reasonable doubt of guilt will a reviewing court disturb the jury's determination of guilt. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) In the instant case the record discloses that the jury heard ample evidence to support its verdict. Although there may be minor discrepancies in the testimony of the various witnesses, it is our opinion from the record presented that there is sufficient credible evidence to sustain the conviction.

■■ The defendant's final contention, asserted in his pro se brief, is that the sentence of from 20 to 50 years is excessive. Sentences shall not be reduced by reviewing courts absent a showing of abuse of the trial court's discretion. (*People v. Heflin* (1978), 71 Ill. 2d 525, 376 N.E.2d 1367; *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) In the case at bar the trial judge carefully considered the relevant factors in imposing sentence. The sentence imposed was within the ranges provided by the legislature and the court did not abuse its discretion.

For the foregoing reasons the judgment of the trial court is affirmed.

Affirmed.

GOLDBERG, P. J., and O'CONNOR, J., concur.