2023 IL App (2d) 210548-U
No. 2-21-0548
Order filed February 1, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 05 CF 2797 |
| AUGUSTINE T. MONTES, | ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice McLaren and Justice Hutchinson concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's second-stage dismissal of defendant's successive postconviction petition is affirmed in part, reversed in part, and the cause remanded.

¶ 2   Pursuant to section 122-1(f) of the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1(f) (West 2018)), defendant, Augustine T. Montes, filed a successive postconviction petition, alleging actual innocence. The trial court granted the State's second-stage motion to dismiss the petition. Defendant appeals. For the following reasons, we affirm in part, reverse in part, and remand for a third-stage evidentiary hearing on defendant's actual-innocence claim pertaining to

his conviction for aggravated discharge of a firearm and the sentencing enhancement for personally discharging a firearm.

¶ 3                                I. BACKGROUND

¶ 4                            A. Trial and Direct Appeal

¶ 5     In 2010, after a trial *in absentia*, defendant was convicted of attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a) (West 2004)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2004)). The jury also signed a special interrogatory, finding that defendant personally discharged the firearm. The court denied defendant's posttrial motions and sentenced him to 26 years' imprisonment for attempted murder, which included a 20-year enhancement for personally discharging a firearm while committing the offense (see 730 ILCS 5/5-8-1(d)(ii) (West 2004)), and a concurrent 10-year term for aggravated discharge of a firearm. A summary of the trial evidence may be found in our 2013 decision, rejecting defendant's claims on direct appeal. See *People v. Montes*, 2013 IL App (2d) 111132, ¶¶ 1-48. However, for overall context relevant to this appeal, we note that the evidence reflected that, on November 22, 2005, Julian Ramos saw four people drive by him in a green, Pontiac Bonneville. Ultimately, one person exited the vehicle and shot at him. Ramos, shaken, but not injured, initially told an officer that someone shot at him three or four times, although, at trial, he testified that there was only one gunshot. Ramos saw the person point a gun at him and heard a gunshot immediately thereafter.

¶ 6     Further, one of the vehicle's occupants, Blake Pannell, was acting as a government informant and recorded the event on a recording device he had been wearing. Pannell testified at trial on the State's behalf, in part explaining that defendant saw Ramos and believed him to be a member of a rival gang. Defendant left the vehicle with a gun, attempting to catch up with Ramos, but he returned to the vehicle when Ramos ran off. Defendant said that he knew where Ramos

was heading, and he instructed the vehicle's driver to drive and park at another location where they could ambush Ramos when he arrived. In the meantime, defendant wiped the gun with a towel and threw it on the middle backseat. Pannell, who was sitting in the backseat, covertly removed the gun's ammunition clip, so no one would get killed, although he did not know if a bullet remained in the gun's chamber. After they arrived at the new location, defendant grabbed the gun and exited the vehicle. However, Ruben Hernandez, one of the other vehicle occupants, appeared to notice that the clip had been left behind. To avoid raising suspicion, Pannell left the car and ran after defendant with the clip. He testified that Ramos appeared, he saw defendant fire the weapon, and he heard a gunshot. When defendant returned to the car, he said, "I almost had him. I almost had him." Hernandez told defendant that, since he was seen, he better finish the job and kill Ramos, and they again began driving to find Ramos, with defendant planning to "just gun him down." As they neared a busy street, however, they saw Ramos had stopped traffic, was in the middle of an intersection, and several vehicles were present, so they left and went to a friend's home. Pannell testified that defendant showered there, likely to remove any gunshot residue.

¶ 7    In addition, the State played for the jury a portion of Pannell's recording of the event. The recording included the sound of a gunshot, as well as defendant saying, "I had to bump that 'nigga,' " (which means kill him), "it was all over for him," "I was chasin', chasing down the block," and "I kept hearin' click, click, click," as well as defendant asking, after arriving at a friend's house, if he could take a quick shower.

¶ 8                              B. Initial Postconviction Petition

¶ 9    In 2014, defendant, through appointed counsel, filed a postconviction petition alleging actual innocence, based upon entrapment, and two claims of ineffective assistance of trial counsel. The trial court summarily dismissed the petition, and we affirmed the dismissal. *People v. Montes*,

2015 IL App (2d) 140485. With respect to the claim of actual innocence premised on entrapment, defendant had alleged that evidence became available after trial that would have supported an entrapment defense. The relevant postconviction allegations were summarized in our prior decision (*id.* at ¶¶ 5-13); however, we note that defendant attached to his petition an affidavit from Hernandez, who alleged that Pannell, whom he knew as a gang "enforcer," had given defendant the gun, told defendant to act as a lookout for rival gangs, and was, essentially, the driving force behind the shooting. Hernandez further summarized that, after defendant exited the vehicle with a gun, Pannell followed him with the clip of ammunition that had been left in the car. After both defendant and Pannell had left the vehicle, a single shot was fired, and Hernandez attested, "I didn't know if [defendant] fired the shot[.]" Defendant also attached to his initial postconviction petition an affidavit from his trial attorney, attesting to Hernandez's prior unavailability. Defendant did not submit his own affidavit. We affirmed the court's summary dismissal of the actual-innocence claim, finding that defendant's entrapment claim failed because it was: (1) forfeited, as he did not raise it at trial; (2) a defense unavailable to defendant, who had not admitted to committing the offense; and (3) an indisputably meritless legal theory. *Id*. at ¶¶ 19-25.

¶ 10                    C. Successive Postconviction Petition

¶ 11    On April 15, 2019, defendant, again through counsel, filed a motion for leave to file a successive postconviction petition, alleging two claims not at issue here and a claim of actual innocence. In support of his actual-innocence claim, defendant attached to the petition an affidavit from Jean-Marc Faison, dated May 15, 2018. In his affidavit, Faison attested that, on November 22, 2005, he was walking to a local liquor store when he saw defendant exit a green vehicle and run west between two houses. He also saw Ramos appear, and he was familiar with Ramos, as they were both gang members in the same neighborhood (different gangs, but not rivals). As he

watched Ramos walking, Faison realized, based on defendant's "strange behavior" and attire (dressed primarily in black, with a hooded sweatshirt and bandana covering his face), that he might be a member of a rival gang. Faison explained:

"As a gang member and resident of the area, I was familiar with the neighborhood and the violence that takes place in the area. Accordingly, I was carrying on my person a .38 revolver gun for protection. At the time, I was on parole for Aggravated Discharge of a Firearm and did not want to get caught in possession of a gun. With little police or gang investigator presence, due to the usual shift change at this time of day, I felt it was okay to have the gun without being caught. I began running west, towards Sumner Avenue, when I saw the individual [*i.e.*, defendant] come out from between the two houses just as [Ramos] was approaching. In fear for my safety and [Ramos's] safety, I took cover behind a parked car and fired a single shot in the air. I fired the shot into the air to scare away the individual I saw [*i.e.*, defendant] without injuring myself or [Ramos]. [Ramos] and I ran in opposite directions after I fired the shot. I am not sure if the individual [*i.e.*, defendant] or [Ramos] saw me there. The individual, [*i.e.*, defendant], did not fire a shot.

I did not provide this information at the time of the incident because I was on parole and was afraid of the legal consequences and possible gang retaliation. At the time of this incident I was 19 years old and found it ironic that a Latin King took the fall for a shooting he did not do. I learned through the newspaper and by word of mouth, that [defendant] was charged and convicted for this shooting.

Now at 30 years old, having matured and having seen [defendant] in Menard Correctional Center in 2015 for a shooting he did not commit, I feel great remorse for not

having come forward with this information. I have no love or loyalty toward any Latin King; just the opposite. I make this statement because it is the right thing to do."

Faison further attested that his statement was given freely and voluntarily, with no threats, promises, or anything offered in exchange for it.

¶ 12 As such, defendant argued in his petition that the above evidence was: (1) newly discovered, as he did not know any of the information until he met Faison in 2015, while both were serving sentences at Menard Correctional Center; (2) material, relevant, and probative of his actual innocence, as it identified the shooter as someone else and established there was no intent to harm Ramos and, thus, no attempt to murder him; and (3) likely to change the trial outcome. In addition, in an affidavit dated March 27, 2019, and attached to the motion for leave to file the successive petition, defendant attested,

"I had no knowledge of the information contained in Jean-Marc Faison's affidavit until I met him while we were both incarcerated at Menard Correctional Center. In addition, I did not fire the shot I am accused of firing. I do not know who did fire that shot, or where it came from."

¶ 13 On October 23, 2019, the trial court granted defendant leave to file his successive petition. Almost one year later, on October 2, 2020, the State moved to dismiss the petition. In sum, the State argued that defendant was estopped from claiming actual innocence because his initial petition had raised an entrapment defense, which necessarily admitted that he fired the weapon. Further, the State argued that the evidence was not of such a conclusive nature that it would likely change the trial result. After detailing the trial evidence reflecting that defendant raised a gun and fired it at Ramos, the State summarized, "[a]t best, [Faison's affidavit] conclusively says that Mr. Faison committed a crime in addition to the defendant, and not in lieu of the defendant."

¶ 14    On October 6, 2021, the court granted the State's motion to dismiss. As to the actual-innocence claim, the court noted that it could not, at the second stage, assess the credibility of Faison's affidavit. However, it found that, when considered along with all evidence in the case, the information in the affidavit would not change the result on retrial. It noted that "the case against defendant was strong. Portions of the events were preserved on audio tape and played for the jury." Further, the court noted that the record, plus defendant's prior "admission" in his initial postconviction petition, fully supported that defendant fired the weapon and, therefore, whether Faison may have "also" fired a weapon was of no relevance. Defendant appeals.

¶ 15                                    II. ANALYSIS

¶ 16    The Act (725 ILCS 5/122-1 *et seq.* (West 2020)) "provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in his original trial or sentencing hearing." *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). A postconviction proceeding allows inquiry only into constitutional issues that were not and could not have been adjudicated on direct appeal. *People v. Ortiz*, 235 Ill. 2d 319, 328 (2009).

¶ 17    The Act establishes a three-stage process for the adjudication of a postconviction petition. *People v. English*, 2013 IL 112890, ¶ 23. If a petition is not summarily dismissed at the first stage, it advances to the second stage, where the State can move to dismiss the petition. 725 ILCS 5/122-5 (West 2020). When reviewing a second-stage dismissal, we consider *de novo* whether the petition allegations, liberally construed and taken as true, are sufficient to warrant relief under the Act. See *People v. Sanders*, 2016 IL 118123, ¶ 31; *People v. Ward*, 187 Ill. 2d 249, 255 (1999). Because the conviction of an innocent person violates due process, a postconviction petitioner may, as here, assert under the Act a claim of actual innocence: (1) based on newly-discovered evidence that (2) is material and not cumulative and (3) which is of such a conclusive nature that

it would probably change the result on retrial. See, *e.g.*, *People v. Robinson*, 2020 IL 123849, ¶ 47. "Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence." *Id.* Further, "[e]vidence is material if it is relevant and probative of the petitioner's innocence" and "[n]oncumulative evidence adds to the information that the fact finder heard at trial." *Id.* Finally, "the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result" and is "the most important element of an actual innocence claim." *Id.*

"Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. The new evidence need not be entirely dispositive to be likely to alter the result on retrial. Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." (Internal citations omitted.) *Id.* ¶ 48.

¶ 18 If the defendant makes a substantial showing of a constitutional violation, the petition advances to the third stage, where the trial court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2020).

¶ 19 Here, defendant argues that the court erred in granting the State's motion to dismiss his successive postconviction petition. He contends that the petition made a substantial showing of actual innocence based on newly discovered evidence because it showed that someone else committed the shooting for which he was convicted. Defendant contends that the court erroneously found that the newly discovered evidence would not change the result at trial, because Pannell was the only person at trial who claimed to have seen him fire a shot. He asserts that

Pannell also testified that he did not know if the weapon defendant carried had a bullet in the chamber, gave contradictory statements of when the gunshot occurred, and that both Ramos and Pannell testified to having heard only *one* gunshot, which rebuts the State's assertion that both defendant *and* Faison could have fired shots. Indeed, he notes, only one gunshot was heard on Pannell's recording. "Therefore, if Faison fired the lone gunshot that evening, that exonerates [defendant]."

¶ 20 Further, defendant argues that the court erred in finding that his initial postconviction petition served as an admission that he committed the shooting because his postconviction counsel did not properly raise an entrapment defense in that petition, where the petition never alleged that defendant fired a shot at Ramos and did not include an affidavit from defendant. Where the initial petition included an affidavit only from Hernandez attesting that he was not sure if defendant fired a shot, because he did not see it, defendant argues that the initial petition filed by counsel cannot be deemed an admission. Indeed, defendant notes, in affirming the summary dismissal of the initial petition, this court recognized that the entrapment defense was not properly raised, in part, because "defendant did not admit to the crime at trial, his postconviction petition failed to allege or attest that he committed the shooting, and Hernandez's affidavit stated only that he did not know if defendant was the shooter." *Montes*, 2015 IL App (2d) 140485, ¶ 25. Accordingly, defendant argues, he cannot now be prevented from making an actual innocence claim. Finally, defendant notes that, even if we were to consider his prior petition as having raised an entrapment defense, that defense should not preclude his actual innocence claim now, given that actual innocence claims may be raised even after defendants have entered guilty pleas. See, *e.g.*, *People v. Reed*, 2020 IL 124940, ¶ 40. In sum, defendant argues that a third-stage evidentiary hearing is warranted because nothing in the record rebuts the newly discovered evidence and, taken with the other

evidence, it would likely change the result at trial. For the following reasons, with respect to defendant's attempted first-degree murder conviction, we disagree, but with respect to his aggravated-discharge conviction and personal-discharge-of-a-firearm sentencing enhancement, we agree.

¶ 21    Preliminarily, we note that the State argues that Faison's affidavit does not satisfy the requirements that it be newly discovered, material, and noncumulative, and that defendant's initial postconviction claim raising actual innocence premised on entrapment bars his current claim. We disagree.    In arguing that the evidence was not newly discovered, the State relies on *People v. Snow*, 2012 IL App (4th) 110415, ¶ 21, which noted that facts known to a defendant at or prior to trial are not considered newly discovered, even if "the source of these facts may have been unknown, unavailable or uncooperative" and, further, that a defendant must establish that the evidence could not have been discovered sooner through due diligence. *Id.*    Here, the State contends, defendant is claiming that he did not shoot the gun, but that fact is not newly discovered, as it was presumably known to him at the time of trial and is a fact to which he could have testified, even if Faison's existence and alleged involvement were unknown. The State further asserts that the fact that defendant absented himself from trial to so testify reflects a lack of due diligence in presenting this actual-innocence theory and, in particular, that defendant further lacked due diligence in obtaining and presenting Faison's affidavit. The State notes that, although Faison attested that, at the time of the 2005 events at issue, he was afraid of legal consequences and gang retaliation, he did *not* aver that he would have been unavailable or unwilling to testify in 2010, if defendant had called him as a witness at trial. More importantly, the State argues, defendant allegedly learned of this newly-discovered evidence in 2015, yet Faison did not sign the affidavit until 2018 and, despite being represented by counsel, defendant did not file the instant petition

until 2019, four years after he met Faison in prison and almost one year after Faison prepared an affidavit. As such, the State requests that we find that defendant has failed to establish that the evidence was newly discovered or that defendant demonstrated due diligence in presenting it as soon as it became available.

¶ 22 We disagree with the State's position. The State does not adequately distinguish defendant's knowledge that he did not shoot the gun with his knowledge that *Faison* allegedly did. As defendant notes, even if he had been present at trial and testified that he did not shoot the weapon, until he met Faison in 2015, he did not know who *did* shoot the weapon. Thus, rather than trying to prove a negative, *i.e.*, that he did not shoot the firearm, Faison's affidavit offers new, affirmative evidence about who (allegedly) *did* shoot the weapon. In our view, defendant has sufficiently demonstrated that the affidavit presents evidence that is newly-discovered. Further, as to diligence, defendant could not have presented the evidence at his 2010 trial, as Faison had not come forward. The State notes that Faison did not come forward in 2005 because of fear of retaliation and because he was on parole, but that he might have been available and willing to do so in 2010; however, it remains that defendant could not have reached out to Faison in 2010, because he did not know Faison existed or had any relevant information to share. Both Faison and defendant attested that the first time that defendant learned Faison's information was when they met in 2015. Moreover, the State notes that although defendant apparently learned this information in 2015, his motion was not filed until 2019. However, Faison attested that he was only 19 years old when the incident occurred and was afraid to come forward, but, by the time he signed his affidavit in 2018, he was 30 years old, had matured, and felt remorse after seeing defendant incarcerated for a shooting he did not commit. We think this implies that, after personally meeting defendant, time and increased maturity were necessary components to Faison's decision to come

forward. Further, defendant and Faison were both incarcerated, which can cause delay in preparing legal documents and presenting them to the court. Ultimately, under the unusual circumstances here, the period between Faison signing an affidavit (in 2018), and the preparation and filing of the motion for leave to file a successive postconviction petition (in 2019), was not unduly lengthy. As such, we conclude that defendant has demonstrated no lack of due diligence in presenting newly-discovered evidence.

¶ 23     The State also argues that the facts in Faison's affidavit are not material and noncumulative, essentially because they simply impeach or discredit testimony from Pannell, Ramos, and defendant's voice on the recording. As such, the State concludes, the affidavit is not "outcome determinative." We agree with defendant that the State conflates the material-and-noncumulative requirement with the conclusive-character requirement for new evidence. Instead, Faison's affidavit is material because it speaks to the ultimate issues in the case, *i.e.*, who attempted to murder Ramos and who discharged a firearm. In addition, it is noncumulative because it does not repeat testimony from the trial; it offers a new perspective on the incident. Finally, we afford no weight here to the fact that defendant previously filed an unsuccessful petition asserting entrapment. It is axiomatic that a defendant may file multiple petitions asserting inconsistent theories of actual innocence; that is why there is no bar to successive petitions based on actual innocence. See 725 ILCS 5/122-1(f) (West 2018).

¶ 24     We now address the requirement that the new evidence be of such a conclusive nature that it would probably change the result on retrial. For the following reasons, we reach different conclusions for each of defendant's convictions. Considering first defendant's attempted first-degree murder conviction, we conclude that the trial court correctly dismissed the petition on the basis that the evidence is not of such conclusive nature that it would probably change the result on

retrial. Again, the conclusive nature of the evidence is the most important element of an actual innocence claim, and we must consider whether Faison's affidavit places the trial evidence in a different light, undermines our confidence in the judgment, and whether, after considering Faison's testimony along with the prior evidence, a fact finder would probably reach a different result. *Robinson*, 2020 IL 123849, ¶ 47. We agree with the trial court that the affidavit does not accomplish any of those objectives.

¶ 25 As to the attempted first-degree murder conviction, the evidence that defendant attempted to murder Ramos was strong and, therefore, whether Faison also fired a weapon is of no relevance. Defendant focuses on the fact that only one gunshot was heard, and, as Faison claims responsibility for that gunshot, defendant accordingly could not have attempted to murder Ramos. We disagree and believe defendant's arguments rest on a faulty premise, *i.e.*, that even if the lone gunshot heard was fired by Faison, he must be exonerated. To the contrary, the evidence that defendant pointed a weapon at Ramos and fired it, whether it was loaded or not, or was loaded and misfired, is strong. As the jury instructions in this case explained, to establish defendant's guilt for attempted murder, the State needed to prove beyond a reasonable doubt that defendant performed an act that constituted a substantial step toward killing Ramos and that he intended to kill Ramos; obviously, as the crime is one of attempt, the killing need not be accomplished. See, *e.g.*, *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 75. Intent can be inferred by considering evidence of defendant's conduct. *Id.* ¶ 80.

¶ 26 Here, evidence of defendant's intent to kill Ramos includes his conduct that, after he identified Ramos as possibly being in a rival gang, defendant took a gun out of the vehicle and went after him. When Ramos ran away, defendant returned to the vehicle and instructed the driver where to go so that they could ambush Ramos at a new location. Pannell removed the clip of

ammunition while the weapon was in the backseat, apparently without defendant's knowledge. Defendant grabbed the weapon, went to find Ramos, and, when Ramos appeared, was seen pointing the gun at Ramos and firing it. He returned to the vehicle saying, "I almost had him." Defendant suggests conflicts in Pannell's testimony support that defendant might not have fired the shot, and he also highlights that Faison's affidavit attests not only that he fired a shot, but also that defendant did *not* fire a shot. While we do not, at this stage, consider the credibility of Faison's affidavit, we can disregard allegations rebutted by the record. See, *e.g.*, *Ward*, 187 Ill. 2d at 255. Here, defendant's *own words*, captured on Pannell's recording, weigh against the assertion that he did not attempt to fire a shot, as defendant was heard saying that he tried to "bump," *i.e.*, kill, Ramos, that he was chasing Ramos down the block, and that he heard the firearm "click, click, click," which established that he fired the weapon but without consequence. Defendant stated he repeatedly pulled the trigger to fire his gun and clearly established the taking of a substantial step toward the commission of the crime. When arriving at a friend's house, defendant asked to shower, presumably to remove any gunshot residue which, again, supports the conclusion that he fired the gun.

¶ 27    Again, defendant's position is apparently premised on the notion that only one gunshot was heard and that, since Faison attests that he fired a shot, the result at trial would probably be different. However, even if it is true that only one gunshot was heard and Faison fired that shot, the evidence that defendant intended to kill Ramos and took a substantial step towards doing so, but was simply unsuccessful, possibly because, when he fired the weapon, there was no bullet in the chamber, was strong. Even *if* the weapon was inoperable because it was unloaded, or loaded and misfired, the evidence does not reflect that defendant knew it to be inoperable when he used it to try to shoot Ramos. See *e.g.*, *People v. Seats*, 68 Ill. App. 3d 889, 895-96 (1979) ("the very

fact of firing a gun at a person supports the conclusion that the person doing so acted with the intent to killing" and affirming attempt murder conviction where "only the fortuity of the gun's misfiring saved" the victim's life); see also Wayne R. LaFave, 2 SUBSTANTIVE CRIMINAL LAW § 11.5(a)(2) (3d ed. 2017) (impossibility may not be a defense when the defendant's intent was to perform an act or bring about a result proscribed by law). As such, that Faison attests that he fired a weapon in the air does not conclusively cast the trial evidence in a different light, undermine our confidence in the judgment, or render it probable that a factfinder would reach a different result on the attempted first-degree murder charge. The fact that Faison pulled the trigger of his gun does not prove that defendant did not pull the trigger on his gun. Neither action by Faison or defendant proves or disproves the mutually exclusive actions of the other person. The trial court properly dismissed defendant's successive postconviction petition as it pertained to defendant's conviction for attempted first-degree murder.

¶ 28    However, while Faison's affidavit does not negate defendant's conviction for attempted murder, Faison's affidavit cuts against defendant's conviction for aggravated discharge of a firearm, as well as the finding that he personally discharged a firearm, which qualified him for the 20-year sentencing enhancement. We note that, in *People v. Chamness*, 2014 IL App (2d) 120768-U, ¶ 24, this court held,

> "[I]n order to be convicted of aggravated discharge of a firearm under section 24-1.2 of the Criminal Code [of 1961], the State must establish that a defendant discharged a firearm by 'causing the ammunition projectile to be forcefully expelled from the firearm.'" *Id.*

Our holding relied on the definition of the term "personally discharged a firearm," found in section 12-15.5 of the Criminal Code, which provides, "A person is considered to have 'personally discharged a firearm' when he or she, while armed with a firearm, knowingly and intentionally

fires a firearm *causing the ammunition projectile to be forcefully expelled from the firearm.*" (Emphasis added.) 720 ILCS 5/2-15.5 (West 2010).

¶ 29    Here, Faison testifies that he fired a gun and that defendant did not, and defendant argues that the evidence established that only one gunshot was actually heard. If defendant pulled the trigger but no ammunition was forcefully expelled from the firearm and, instead, Faison was the person who fired that shot, we agree that a fact finder could reach a different result on the aggravated discharge of a firearm count, as well as its finding that defendant "personally discharged a firearm," which mandated a sentencing enhancement. Again, Faison's affidavit does not need to be entirely dispositive to be likely to alter the result on retrial; "probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Robinson*, 2020 IL 123849, ¶ 48. Here, regardless of whether the evidence reflects one shot or multiple shots, close in time—*i.e.*, that both Faison and defendant fired a weapon—surely that information would have been at least *relevant* to the jury when deliberating on the aggravated-discharge count and when making a finding that defendant personally discharged the firearm. Accordingly, with respect to the aggravated-discharge conviction and firearm enhancement, we conclude that the trial court incorrectly dismissed the petition on the basis that the evidence is not of such conclusive nature that it would probably change the result on retrial.

¶ 30    We emphasize that nothing we decide here should be taken to suggest that defendant is necessarily innocent. As a witness, Faison's story about the warning shot may eventually fall apart for any number of reasons. But the evaluation of his credibility is not before us; "credibility determinations are made at a third-stage evidentiary hearing." *Robinson*, 2020 IL 123849, ¶ 81 (citing *Sanders*, 2016 IL 118123, ¶¶ 33, 42). We simply conclude that, with respect to his

conviction for aggravated discharge of a firearm and the finding that he personally discharged a firearm, resulting in a sentencing enhancement, defendant *has* made a substantial showing to justify a third-stage hearing. At this juncture, the conclusion that the information in Faison's affidavit reasonably could have impacted those verdicts is simply inescapable. See *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 246 (7th Cir. 2003) (noting that a reasonable chance of an acquittal may be "less than fifty percent *** so long as the chances of acquittal are better than negligible"). Faison's affidavit unquestionably casts in a different light the trial evidence with respect to that charge and finding and undermines our confidence in the verdict on defendant's conviction for aggravated discharge and on the firearm enhancement. Accordingly, we reverse the trial court and allow defendant's actual-innocence claim, with respect to his aggravated-discharge conviction and the personal-discharge enhancement, to proceed to an evidentiary hearing. See, *e.g.*, *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 71 (reversing in part the second-stage dismissal of a postconviction petition and remanding for an evidentiary hearing on certain claims).

¶ 31                                  III. CONCLUSION

¶ 32    For the reasons stated, the circuit court of Kane County is affirmed in part, reversed in part, and the cause is remanded.

¶ 33    Affirmed in part and reversed in part; cause remanded.