THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES STEWART, Defendant-Appellant.

First District (2nd Division)   No. 79-845

Opinion filed May 13, 1980.

Lawrence Wolf Levin and Jaimee H. Levin, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joel A. Eisen-Stein, and Christine A. Campbell, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant, James Stewart, was charged by information with possessing more than 30 grams of cannabis sativa. (Ill. Rev. Stat. 1977, ch. 56½, par. 704(d).) Testimony admitted over defendant's objections at the bench trial indicated Stewart, without any official recitation of his rights, told a police officer during the booking process that his residence was located at the address where he was arrested and where the cannabis was found. The trial court found Stewart guilty as charged and sentenced him to a period of 18 months' probation.

On appeal Stewart asks this court to consider (1)(a) whether the trial court erred by admitting evidence of defendant's oral statement when he was not advised of his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; (b) whether the court erred by admitting that evidence when the State failed, in its discovery answer, to disclose its intention to use the statement; (2) whether the court erred by admitting evidence of defendant's delivery of marijuana prior to his arrest

for possession; and (3) whether the State failed to prove defendant guilty beyond a reasonable doubt.

On April 11, 1978, at 12:40 a.m., Stewart was arrested at 2714 West Lexington Avenue, Chicago, and charged with possession of marijuana. At trial the State proffered the testimony of one witness, the arresting officer, Investigator Greg Zito. Zito testified as follows. Shortly prior to Stewart's arrest, Zito observed defendant hand two manila envelopes to a police informant in the doorway of 2714 West Lexington Avenue. The defendant reentered the apartment after the delivery. Zito then examined the contents of the envelopes and concluded the material therein was marijuana.

Zito, with a partner, then approached the doorway in which defendant had made the exchange. He knocked on the door and identified himself as a police officer. When he heard no response, he opened the door and the two investigators entered a hallway of the residence. Zito saw seven manila envelopes protruding from a displaced wall tile. These envelopes were similar to the two he had obtained from the informant.

While the investigators withdrew the envelopes from the wall, Stewart stood up from a couch in the living room and approached Zito. Stewart was then arrested. Zito entered the living room which was occupied by two other men and saw 22 or 23 additional manila envelopes on a table in front of the couch. These envelopes were confiscated and at trial the parties stipulated their aggregate contents to be in excess of 30 grams of marijuana. A search of the residence revealed three young children sleeping in one of the bedrooms off the kitchen.

After Stewart's arrest, at approximately 2 a.m., Zito and Stewart were in a second floor office of the 14th district police station. Zito, seated before a typewriter, asked defendant for his name, address, identification, and gun registration card. Over defendant's objection Zito testified that Stewart gave his name and then gave his address as 2714 West Lexington. Zito asked Stewart why his State firearms card indicated his address as 11422 South Yale, Chicago. According to Zito, defendant stated he "did not live there any more."

On the morning of April 12, 1978, Stewart signed an "I-bond"[1] which also listed his address as 2714 West Lexington Avenue.

Stewart was the only defense witness to testify. He stated that he lived with his parents at 11422 South Yale and that he told Zito he lived there. He stated he never lived at the location of his arrest. Moreover, he introduced into evidence his firearms identification card, his Illinois driver's license, his automobile registration, and an Internal Revenue

---

[1] An "I-bond" is a term used to describe a paper a person, charged with an offense, signs when released on bond by signing for his own recognizance.

notice dated December 4, 1978, all of which indicated his residence to be at his parent's home.

Defendant explained he signed his "I-bond" slip, which listed 2714 West Lexington as his address, because he was told by the clerk who filled it out that "to get an I-bond you sign here and you are being released." He claimed he did not read the slip.

After reviewing the testimony and arguments of counsel, the trial court found Stewart guilty of constructive possession of more than 30 grams of marijuana.

## I.
### A.

■■ It is well established that to support a conviction of unlawful possession of drugs, the State must prove the accused had knowledge of the presence of the substance and that the substance was in his immediate possession and control. (*People v. Galloway* (1963), 28 Ill. 2d 355, 358, 192 N.E.2d 370.) Possession may be actual, or it may be constructive (*People v. Mack* (1957), 12 Ill. 2d 151, 162, 145 N.E.2d 609), as where drugs are found on premises occupied by or under the control of a defendant (*People v. Nettles* (1961), 23 Ill. 2d 306, 308, 178 N.E.2d 361; see also *People v. Bell* (1972), 53 Ill. 2d 122, 126, 290 N.E.2d 214).

Stewart claims the trial court erred when it permitted Zito to testify over objection that defendant gave 2714 West Lexington as his address where defendant had not been previously advised of his constitutional rights pursuant to *Miranda v. Arizona*. The Supreme Court in *Miranda* held that, absent sufficient warnings by police, incriminating statements elicited from an accused during in-custody interrogation must be excluded from evidence adduced during the trial of that person. (384 U.S. 436, 479.) Thus, defendant argues the oral statement testimony should not have been admitted.

The State claims that Stewart gave the 2714 West Lexington address in response to a preliminary booking process question and it cites *People v. Fognini* (1970), 47 Ill. 2d 150, 265 N.E.2d 133, *cert. denied* (1971), 402 U.S. 911, 28 L. Ed. 2d 653, 91 S. Ct. 1389, in support of its argument that such responses are within the scope of *Miranda*. In *Fognini*, our supreme court held it was proper to admit testimony of a booking officer that a burglary defendant used an alias when he was asked his name as part of the booking process. The court rejected the defendant's claim that such evidence was prejudicial and stated:

> "The preliminary questions asked an accused with respect to his name and address, which are part of the booking proceedings certainly do not amount to an interrogation in order to elicit incriminating testimony or admissions from the defendant.

Therefore no *Miranda* warnings or hearings to suppress the evidence were required prior to hearing this testimony at the trial. *Toohey v. United States* (9th [C]ir. 1968), 404 F.2d 907; *People v. Rivera* [(1970)], 26 N.Y.2d 304, 258 N.E.2d 699, [702]." (47 Ill. 2d 150, 152.)

See also *People v. Weathington* (1979), 76 Ill. App. 3d 173, 175-76, 394 N.E.2d 1059; *People v. Donald* (1977), 56 Ill. App. 3d 538, 544, 371 N.E.2d 1101, *appeal denied* (1978), 71 Ill. 2d 604; *People v. Morrissey* (1977), 49 Ill. App. 3d 622, 627, 364 N.E.2d 454, *appeal denied* (1977), 66 Ill. 2d 634.

Stewart attempts to distinguish the cases above on the ground that in each case the inculpatory statement did not have a direct and crucial bearing upon the issue of guilt of the accused. The instant case is different, he argues, because the essential element of constructive possession is dependent upon evidence of his residence at 2714 West Lexington. Thus, he contends the *Fognini* holding is inapplicable. We disagree.

In *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126, *appeal denied* (1977), 66 Ill. 2d 632, this court was faced with a similar attempt to distinguish the *Fognini* case. In *Dees*, the trial court permitted the admission of inculpatory statements elicited from defendants after they initially exercised their right to remain silent. The statements consisted of responses to routine booking questions concerning, *inter alia*, defendants' names, addresses, and social security numbers. On appeal defendants argued the questions were asked for the purpose of gathering evidence of flight, rather than for general administrative purposes. This court rejected that argument and essentially held that brief, routine booking questions do not constitute forbidden interrogation under *Miranda*, even though inculpatory responses are sometimes obtained. *People v. Dees* (1977), 46 Ill. App. 3d 1010, 1024; see also *United States v. Prewitt* (7th Cir. 1977), 553 F.2d 1082, 1085-86, *cert. denied*, 434 U.S. 840, 54 L. Ed. 2d 104, 98 S. Ct. 135; *United States ex rel. Hines v. LaVallee* (2d Cir. 1975), 521 F.2d 1109, 1112-13, *cert. denied sub nom. Hines v. Bombard* (1976), 423 U.S. 1090, 47 L. Ed. 2d 101, 96 S. Ct. 884; but see *Proctor v. United States* (D.C. Cir. 1968), 404 F.2d 819, 820-21.

Asking a person, about to be charged with a crime and booked by the police, his name and address is both proper and necessary. The instant record indicates Zito's questioning of Stewart during the booking process was both brief and routine. It did not amount to forbidden interrogation. In response, Stewart identified 2714 West Lexington as his residence. That inculpatory response, therefore, is admissible.

## B.

Stewart next claims his statement should not have been introduced

because the State failed to specifically identify the statement during discovery. He argues the State's failure violated Supreme Court Rule 412(a)(ii). (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)(ii).) Our review of the record, however, reveals the State substantially complied with the rule.

■■ Rule 412(a)(ii) requires the State to disclose, upon defendant's motion, any oral statements made by the accused and list any witnesses to such statements. (See *People v. Cannon* (1978), 62 Ill. App. 3d 556, 559, 378 N.E.2d 1339; *People v. Musgray* (1976), 37 Ill. App. 3d 48, 51, 344 N.E.2d 708.) The rule was adopted to prevent surprise and prejudice to the accused. (*People v. Donald* (1977), 56 Ill. App. 3d 538, 543.) Thus, technical compliance with the rule may be excused where the defendant has had access to the statements, even though the State denied knowledge of them. *People v. Donald*; see, *e.g., People v. Sanders* (1974), 56 Ill. 2d 241, 252-53, 306 N.E.2d 865, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178 (defendant held to have access where statement disclosed during motion to suppress); *People v. Simms* (1976), 38 Ill. App. 3d 703, 708, 348 N.E.2d 478, *cert. denied* (1977), 429 U.S. 1106, 51 L. Ed. 2d 558, 97 S. Ct. 1138 (defendant held to have access where previous counsel received statement prior to trial).

■■ The instant record discloses Stewart was informed that Zito would be a witness for the State. Stewart's address statement was reduced to a writing in the police report filed by Zito. The police report was also made available to Stewart. He acknowledged receipt of it. Thus, Stewart had access to both the statement and the witness to the statement. The purpose of Rule 412(a)(ii) was satisfied. Stewart cannot, therefore, support his claim of error with the requisite showing of surprise or prejudice.[2]

## II.

■■ Stewart also claims the trial court erred when it admitted testimony that defendant made a delivery of marijuana to an informant prior to his arrest. He cites several cases which specifically hold that evidence of other crimes is inadmissible to show propensity to commit the crime charged. (See generally *People v. Meid* (1970), 130 Ill. App. 2d 482, 487, 264 N.E.2d 209; *People v. Butler* (1971), 133 Ill. App. 2d 299, 301-02, 273 N.E.2d 37; *People v. Bryant* (1971), 1 Ill. App. 3d 428, 432, 274 N.E.2d 491.) Although the State agrees that these cases properly state the law, it contends the cases are inapposite. The State claims the evidence was

---

[2] *We note* that Stewart, through one of his attorneys, made the following statement in a pretrial motion: "That on April 11, 1978, the defendant was lawfully upon the premises *of his place of residence* located at 2714 West Lexington, Chicago, Illinois." (Emphasis added.)

admitted to show identity of the defendant, proximity of the crime, and defendant's knowledge.

The facts of this case closely parallel those in *People v. Wilson* (1970), 46 Ill. 2d 376, 263 N.E.2d 856. There, our supreme court affirmed the admission of testimony which indicated involvement by the accused in the sale of drugs where the defendant was on trial for possession. The court stated:

> "[W]e agree with the holding of the appellate court that such evidence was admissible as an exception to the exclusionary rule forbidding the admission of evidence of a crime independent of and disconnected from the one for which defendant is charged. Evidence, relevant to the main issue, which serves to place the defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive, or knowledge is admissible. (*People v. Tranowski*, 20 Ill. 2d 11.) In each case it must be determined from the facts as to whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried. [Citation.] The appellate court correctly noted that defendant's defense was that he had no knowledge or control of the [drugs], and the evidence of the sale was, therefore, admissible to show defendant's knowledge, motive, and intent in the possession of [drugs]. Therefore, the evidence of the other crime of sale of [drugs] was needed to refute the defendant's contention that he had no knowledge of the [drugs] that were found in the apartment and that they belonged to one of the other adults present." (46 Ill. 2d 376, 380-81.)

In the instant case the defense was lack of constructive possession. The conduct of the accused was therefore relevant and closely related to whether he had knowledge and control of the contraband found in the residence. Thus, the evidence was admissible.

## III.

Finally, defendant claims he was not found guilty beyond a reasonable doubt. He contends that the State has failed to produce sufficient evidence of constructive possession. Constructive possession may be inferred where the evidence shows defendant controlled the premises upon which the drugs were found. (*People v. Mosley* (1971), 131 Ill. App. 2d 722, 724, 265 N.E.2d 889; see also *People v. Nettles* (1961), 23 Ill. 2d 306, 308; *People v. Bell* (1972), 53 Ill. 2d 122, 126.) A review of all the evidence leads us to conclude there exists sufficient credible evidence

from which the trial court could, with reason, find that the premises upon which the drugs were located were under the knowing control of Stewart. See generally *People v. Galloway* (1963), 28 Ill. 2d 355, 358-60; *People v. Nettles* (1961), 23 Ill. 2d 306, 308-09; *People v. Mack* (1957), 12 Ill. 2d 151, 163.

In accordance with the aforesaid reasons we affirm the judgment of the circuit court of Cook County.

Affirmed.

PERLIN, P. J., and HARTMAN, J., concur.