THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KEVIN BURNSIDE, Defendant-Appellant.

Third District   No. 3—84—0625

Opinion filed May 15, 1985.

·Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Kevin Burnside, appeals his conviction following a jury trial in the circuit court of Peoria County. Only one issue is presented for review, *i.e.*, whether the evidence sufficiently established defendant's guilt of felony theft or whether defendant's conviction must be reduced to one of misdemeanor theft only.

The trial concerned the theft of four automobile wheels and tires having a total value in excess of $300. It was stipulated that the four wheels were valued at $50 each and four center caps were valued at $10 each. Three of the tires were worth $60 each, while the fourth was worth no more than $25. It was also stipulated that lug nuts cost $1.25 each.

The sole question is whether the evidence established that the defendant is guilty of the theft of only two or all four wheels and tires. If the evidence established that the defendant was guilty of the theft of only two wheels and tires, having a total value of no more than $252.25, then his conviction for felony theft (over $300) must be reversed.

The evidence indicated that during the early evening of February 6, 1984, an automobile belonging to Ronald Schertz was taken from the 2100 block of a street on the south side of Peoria to an alley in the 1400 block of West Millman. Judith May and Myron Owens lived at 1411 West Millman, and each testified concerning their observations on the evening in question.

According to May, she noticed a truck parked in front of her house at approximately 9 p.m. She observed two short black men standing behind the truck placing some tires in the back of the vehicle. After she saw the men load the tires into the back of the truck, May returned her attention to the television set she was watching.

Myron Owens testified that when he drove up to his house after 9 p.m., he noticed a red pickup truck parked in front of his residence. The vehicle had one occupant and the individual wore a stocking cap. Owens started to park the vehicle he was driving but remembered he had to pick up his daughter and continued on down the street. When Owens returned 15 to 20 minutes later, he noticed that the truck was gone. He parked his car in the alley behind his home and noticed that a car was parked across the alley without wheels. He went inside his house and called the police.

Within 10 to 12 minutes, Owens accompanied certain police officers to the intersection of Howett and McArthur, where he saw what appeared to be the same red pickup truck. Of the suspects in custody, Owens identified the defendant as the driver of the truck.

Officer Burnsheuer testified that he searched the area between where the automobile was discovered and the scene of the defendant's arrest. He found the victim's citizen's band radio and tool box in an alley next to a garage at 1015 Howett Street. The residence at the address was the home of Matthew Burnside, the defendant's uncle. The officer also discovered 10 lug nuts at the scene, some four blocks from where the stripped automobile was discovered.

Officer Hoskins testified that he went to the home of Matthew Burnside at approximately 9:45 p.m. on February 6. Hoskins went to the residence because he knew Matthew Burnside owned a red pickup truck and he had previously seen the defendant driving the vehicle. Subsequently he observed the red pickup truck on Howett Street. Hoskins followed the truck until it turned into the Harrison housing complex. When the truck stopped, he observed that it had three occupants. The defendant's brother, Terry Burnside, was sitting in the driver's seat, while the defendant was sitting in the middle and Clarence Jones was sitting on the passenger side of the vehicle. The three individuals were arrested, the truck searched and two lug wrenches recovered from behind the seat. No stolen wheels or tires were recovered from the truck.

When Hoskins later questioned the defendant about his presence near the Owens' residence, the defendant initially said that he knew nothing about the stripped vehicle.

The defendant later told the police that he had gone to see his girlfriend, Bee Bee Armstrong, who lived next door to the Owens' residence. The defendant indicated that Jones had paid him a few dollars to take him to the 1400 block of Millman Street and that his brother, Terry, had gone along for the ride.

The defendant said that they parked the truck in front of the Armstrong residence and that the defendant went up on the porch to visit his girlfriend. However, the defendant said he left when he saw his girlfriend's mother look out the window because he believed she didn't like him.

In the meantime, Jones had asked the defendant to "change a tire" but the defendant refused. When the defendant saw Mrs. Armstrong looking out the window, he ran from the house thinking she would call the police. He told his brother to drive the truck down the street with its lights off. The defendant said Jones then walked up with only two tires and placed them in the truck. They drove away and were arrested shortly thereafter. The defendant refused to disclose what happened to the stolen tires which were missing when they were arrested.

Based on the foregoing evidence, the defendant contends that he stole only two tires from the Schertz automobile and was therefore wrongfully convicted of the theft of all four tires, a felony.

The defendant relies on *People v. Johnson* (1981), 96 Ill. App. 3d 1123, 422 N.E.2d 19, for the proposition that recent unexplained possession of only a portion of stolen property is not proof that the accused stole all the property taken from the victim.

The People initially contend that the defendant waived the right to present the issue on appeal by failing to argue the point at trial or to specifically raise the issue in his post-trial motion. (*People v. Thiel* (1981), 102 Ill. App. 3d 28, 429 N.E.2d 565.) The defendant claims that his post-trial motion adequately preserved the issue for review by the general allegation that he was not proved guilty of felony theft beyond a reasonable doubt. The post-trial motion was not argued.

As to the defendant's failure to raise the specific issue at trial, he argues that his attorney did not have to compromise his defense by arguing in the alternative that his client was guilty of only misdemeanor theft. In any event, defendant contends that issues going to the sufficiency of the evidence may be raised for the first time on appeal. *People v. Harrawood* (1978), 66 Ill. App. 3d 163, 383 N.E.2d 707.

In addition, the People contend that we should decline to follow the precedent of the *Johnson* decision, which in turn was based upon the supreme court's holding in *People v. Housby* (1981), 84 Ill. 2d 415, 420 N.E.2d 151. In *Housby*, our supreme court reexamined the use of presumptions arising from the recent possession of stolen property, as a result of the United States Supreme Court decision of *County Court v. Allen* (1979), 442 U.S. 140, 60 L. Ed. 2d 777, 99 S. Ct. 2213.

"To the extent that past Illinois decisions have held that exclusive and unexplained possession of recently stolen property is sufficient, standing alone and without corroborating evidence of guilt, for conviction of burglary, those decisions, in the light of the [*Court* holding] can no longer be applied." *People v. Housby* (1981), 84 Ill. 2d 415, 423, 420 N.E.2d 151, 155.

We believe that the cases relied upon by the People, namely, *People v. Dayani* (1973), 16 Ill. App. 3d 615, 306 N.E.2d 488, and *People v. Deper* (1980), 89 Ill. App. 3d 135, 411 N.E.2d 543, fall within this latter category.

However, the most glaring problem with an affirmance is not the application of a Supreme Court decision which happens to be contrary to the State's position and which we are urged not to follow, but the substantive weakness of the evidence at its most critical point in the

trial.

To bolster its position, we are directed by the State to a portion of the record where on *cross-examination* Ms. May was asked:

"Q. Did both of these fellas [*sic*] have tires in their hands or just one?

A. Both.

Q. How many tires were they carrying?

A. I only saw two.

Q. Did you tell any of the officers that you saw these two fellas walk from between the houses with tires in their hands?

A. I said that I saw two of them come down the hill by my house and was putting [*sic*] what looked like tires into the back of the truck."

The State argues that based upon the foregoing testimony, which they concede to be "somewhat ambiguous," it is possible that the trier of fact could interpret the remarks of the key witness in the case in one of two ways, *i.e.*, she saw two individuals and each was carrying two tires, or she saw two individuals and each carried only one tire.

■ The State continues by arguing that apparently the witness had told the police (as shown by their reports) that she saw four tires loaded onto the truck. The problem here, of course, is that police reports are not admissible as substantive evidence (*People v. Morris* (1978), 65 Ill. App. 3d 155, 382 N.E.2d 383), and may only be used to refresh the recollection of the witness or for impeachment. Such documents cannot be substituted for actual eyewitness testimony either before the trier of fact or before a court of review in a tardy attempt to bootstrap or camouflage an otherwise deficient record.

The defendant has filed a motion to strike those portions of the State's brief which attempt to make use of the police reports which were included in the common law record as part of their response to defendant's motion for pretrial discovery. While we decline to grant the defendant's motion since the material was properly included in the record on appeal (87 Ill. 2d R. 321), we nevertheless decline to rely on their content to rescue and revive the evidentiary deficiencies present in this case.

■ If the police reports indicated that Ms. May had informed the authorities that she saw the defendant load or help load four tires in the truck, then it was up to the prosecution to establish that essential fact in its case in chief, instead of belatedly seizing upon certain "ambiguous" remarks in cross-examination to prove their case. There was no evidence which proved the defendant's participation in the theft of

all four tires. For all we know, the other tires could have been removed before the defendant ever arrived at the scene, or after he left. The person who took the car (perhaps Clarence Jones) may have taken the tires in question. *Maybe* the defendant did take or participate in the removal of the other two tires, even though there was no testimony elicited at the trial which proved he did so. Under our form of jurisprudence, however, the commission of a crime must be proved beyond a reasonable doubt, and not based upon speculation, conjecture, admittedly ambiguous testimony or maybes. *Vachon v. New Hampshire* (1974), 414 U.S. 478, 38 L. Ed. 2d 666, 94 S. Ct. 664.

For the foregoing reasons, the judgment and sentence of the circuit court of Peoria County is reversed and the cause remanded with directions that a new sentencing hearing for misdemeanor theft be afforded the defendant and that he be sentenced accordingly.

Reversed and remanded with directions.

HEIPLE, P.J., and WOMBACHER, J., concur.