THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RANDY L. BRACKETT, Defendant-Appellant.
Fifth District   No. 5—83—0397

Opinion filed June 20, 1986.—Rehearing denied July 18, 1986.

Randy E. Blue and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Dick Allen, State's Attorney, of Edwardsville (Kenneth R. Boyle, Stephen E. Norris, and Julianne Cordts, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Randy L. Brackett, was charged by indictment in Madison County with four counts of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1), rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1), deviate sexual assault (Ill. Rev. Stat. 1981, ch. 38, par. 11—3), and two counts of aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 12—4). Pursuant to defendant's motion to sever, a separate trial was allowed for the murder charges. At the first bench trial, defendant was convicted of rape and the two counts of aggravated battery but acquitted of deviate sexual assault. Defendant was sentenced to an

extended term of imprisonment of 60 years for rape and concurrent extended terms of imprisonment of 10 years for each count of aggravated battery. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—8—2, 1005—5—3.2(b).) At the second bench trial, defendant was convicted of murder. Defendant was sentenced to an extended term of imprisonment of 60 years for murder (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—8—2, 1005—5—3.2(b)), to run concurrently with the sentences previously imposed for rape and aggravated battery. Defendant appeals. The facts are as follow.

Alton police officer Jerry Farmer testified that at about 9 a.m. on October 21, 1981, he was dispatched to 3208 Brown Street in Alton to investigate a possible rape. Upon arrival, Farmer found the 86 year-old victim lying naked on a bed with her face severely bruised, her left eye swollen almost shut, and with what appeared to be a broken arm. The victim, who was very upset, told Farmer that she had been beaten, choked, and raped twice the previous night. She stated that her assailant was young, white, and had dark hair.

While gathering evidence at the crime scene, officers found a book of checks of the Bank of Alton imprinted with the victim's name. After informing the bank that a possible suspect may attempt to cash one of these checks, the bank informed the police that an individual had attempted to do so earlier that morning. Cindy Duggan, a teller at the bank, testified that a young white male attempted to cash a check drawn on the victim's account at approximately 8:20 a.m. Ms. Duggan identified defendant at a photographic line-up before defendant's arrest and at trial as the person who attempted to cash the check. The defendant was apprehended later the same day. A check written on the victim's account was found in his possession.

A medical examination of the victim was performed upon her arrival at the hospital. This examination revealed that the victim had sustained a broken arm, a broken rib, and several bruises to her face, neck, arms, trunk, and inner thighs. A rape-test kit showed that although no spermatozoa was found in the victim's vagina, mouth, or rectum, blood compatible with the victim's blood type was found in her vagina. The victim's blood type matched blood found on two pillowcases removed from the scene and blood found on defendant's undershorts when he was apprehended. Seminal material consistent with the defendant's blood type was also found on these pillowcases. Pubic hairs found on the victim's bed sheets matched samples taken from defendant.

A videotape of defendant's confession was played in open court. In his statement, defendant claimed that on the night in question he

knocked on the victim's door and the victim let him into her house. She lay down on a bed while defendant sat in a chair. After a while, the defendant approached her and began fondling her breasts. She placed her hand on his jaw, digging in her fingernails. He pushed her hand away and continued fondling her breasts. He removed his clothes, masturbated himself, then inserted his penis into her vagina. He withdrew his penis and ejaculated. During these activities, he struck the victim in the face once with his fist and once with his open hand. Afterward, he arose from the bed, fried some eggs, and fell asleep in a chair. When he awoke in the morning, he searched unsuccessfully for something to sell and then had the victim write him a check for $125 after he found her glasses so that she could see. He was unable to cash the check because the bank reported the account was closed.

Dr. Robert Elliott, the victim's physician, testified that prior to the attack the victim was in relatively good health. After the attack, Dr. Elliott observed that although her injuries were healing normally, she became withdrawn and depressed and felt that she did not want to live any longer. While she was in the hospital, the victim resisted all efforts to feed her.

After approximately two weeks in the hospital, the victim was transferred to a nursing home. Nursing-home personnel noted that the victim was very weak and resisted their efforts to feed her. On or about November 21, 1981, the nursing-home staff, at the suggestion of Dr. Elliott, attempted to feed the victim with a nasal gastric tube. This suggestion was abandoned because the victim's small nose and facial injuries made it too painful. Dr. Elliott advised the nursing-home staff not to use the tube because its use would only prolong the misery of the victim, whose death he believed imminent.

When nurse Bernice Doerr arrived at the nursing home on the morning of November 24, 1981, she was informed that the victim's condition had worsened so much the previous night that her family had been called. Specifically, her blood pressure was low and her legs were cyanotic. The victim looked very weak when Ms. Doerr saw her that morning. Ms. Doerr made a record of the fact that the victim was moaning and turning her head from side to side at 11 a.m.

Dorothy McBride, a nurse's aide, testified that she fed the victim lunch on November 24, 1981, by giving her small bites of pureed food on the end of a spoon. After hungrily consuming approximately six ounces of food without choking or gagging, the victim spit out some vegetables. After an unsuccessful attempt to get the victim to swallow some ice cream, Ms. McBride summoned the nurses. The

victim died shortly thereafter.

Dr. Steven Nuernberger performed an autopsy on the victim. He found that the victim died of asphyxiation caused by soft yellow food matter packed in the trachea and bronchi. While Dr. Nuernberger believed that the numerous injuries present upon the victim's body would not impede her ability to swallow, he agreed that a broken rib could decrease one's ability to expel food from the trachea. However, Dr. Nuernberger believed that a normal person would have had difficulty breathing deeply enough to expel the volume of food found in the victim's trachea.

Although Dr. Elliott had not seen the victim since she left the hospital, he believed her death was caused by her being too weak to swallow food.

On appeal the defendant argues that: (1) he was not proved guilty of murder beyond a reasonable doubt because the victim's death was caused by supervening acts unrelated to the defendant's acts of sexual assault; (2) alternatively, the defendant's convictions for rape and aggravated battery must be vacated as either violative of the constitutional prohibition against double jeopardy or as lesser included offenses of murder; (3) alternatively, one of defendant's aggravated-battery convictions must be vacated because the two acts constituting aggravated battery were almost simultaneous in time and involved the same victim; and (4) alternatively, the extended-term sentences for rape and aggravated battery must be reduced to nonextended terms because they were not of the most serious class of felony of which defendant was convicted.

■ Prior to oral argument in this case, defendant moved to strike certain portions of the State's brief which refer to statements the victim made to Alton police officer Bonnie Parker. Specifically, defendant argues that since neither the victim nor Officer Parker testified at trial, and since Officer Parker's police report was inadmissible as evidence at trial, all references to these matters must be stricken. Although police reports are not admissible as substantive evidence, we decline to grant defendant's motion since the material was properly included in the record on appeal. (87 Ill. 2d R. 321; *People v. Burnside* (1985), 133 Ill. App. 3d 453, 457, 478 N.E.2d 884, 887.) Nevertheless, we will not rely upon such evidence in our determination of the issues presented. 133 Ill. App. 3d 453, 457, 478 N.E.2d 884, 887.

■ To prove murder, the State must establish beyond a reasonable doubt that death was caused by criminal activity. The existence of a time interval between the defendant's act and death does not

preclude such causal link. Instead, the adequacy of the evidence depends on the autopsy; the defendant's acts related to the physical condition at death; and the explanation of the reasons underlying the cause of death. *People v. Kelly* (1985), 136 Ill. App. 3d 154, 162, 482 N.E.2d 614, 619.

The defendant's acts need only have contributed to the death, and the defendant may be held accountable even though he had no intent to and did not personally kill the victim. *People v. Kelly* (1985), 136 Ill. App. 3d 154, 162, 482 N.E.2d 614, 619.

In the instant case the defendant inflicted a broken arm, a broken rib, and numerous bruises upon the victim during the attack. These injuries were still present upon the victim's body five weeks later during the autopsy. Although the cause of death was asphyxiation caused by the compaction of a substantial amount of food material in the victim's trachea and bronchi, Dr. Nuernberger believed that a broken rib could decrease one's ability to expel food from the trachea. Moreover, Dr. Elliott was of the opinion that the victim, who was in relatively good health prior to the attack, died of asphyxiation because she was too weak to swallow.

When presented with a challenge to the sufficiency of the evidence, it is not the function of a reviewing court to retry the defendant. Rather, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277.) We find that while the defendant's acts did not immediately cause the victim to asphyxiate, a rational trier of fact could have inferred that the injuries defendant inflicted upon the victim contributed to her death. The defendant's murder conviction must therefore be affirmed.

The defendant's second contention is that his rape and aggravated-battery convictions must be vacated as either violative of the constitutional prohibition against double jeopardy or as lesser included offenses. Although the trial upon the murder charges was held after the trial upon the rape and aggravated-battery charges, this procedure was adopted at defendant's request. Consequently, double jeopardy principles do not apply. *Jeffers v. United States* (1977), 432 U.S. 137, 152-54, 53 L. Ed. 2d 168, 181-82, 97 S. Ct. 2207, 2217-18.

Defendant next urges that his rape and two aggravated-battery convictions, as charged in the indictment, must be vacated because they are all lesser included offenses of the greater offense

of murder. We deem it unnecessary to consider this contention, however, because we conclude that defendant's convictions and sentences for these three offenses are impermissible under the rationale of *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.

The defendant was charged with four counts of murder. One based upon felony murder predicated on rape; two based upon felony murder predicated on aggravated battery (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(a)(3)); and one based upon defendant knowingly performing acts creating a strong probability of death or great bodily harm. Since we are required to assume that the trial court, in entering a general verdict of guilty of murder, found the defendant guilty as charged in each count (see *People v. Drewniak* (1969), 105 Ill. App. 2d 37, 41, 245 N.E.2d 102, 104), we must evaluate defendant's convictions in light of each count as charged.

Count IV of the indictment lodged against the defendant charged as follows:

"*MURDER* in that the said defendant, without lawful justification, forcibly had sexual intercourse with [the victim] against her will, struck her repeatedly about the face, broke her left arm, and caused other serious injuries, knowingly [*sic*] such acts created a strong probability of death or great bodily harm to [the victim], thereby causing the death of [the victim] \*\*\*."

In finding the defendant guilty of murder, the trial court stated:

"Although Defendant may not have anticipated the sequence of events following his acts which resulted in the death of [the victim] his unlawful acts in the commission of the forcible felonies of rape and aggravated battery precipitated those events and he is responsible for the consequences."

Although the trial court specifically rejected the "psychological murder" theory put forth by the State, it found that the defendant's act of rape contributed to the victim's death. Therefore, the court expressly found that the offense of rape precipitated the victim's death as charged in count IV of the indictment.

Aggravated battery was charged in the indictment as follows:

"COUNT VII:

AGGRAVATED BATTERY in that the said defendant, in committing a Battery, \*\*\* knowingly caused great bodily harm to [the victim] in that he broke [the victim's] left arm \*\*\*;

COUNT VIII:

AGGRAVATED BATTERY in that the said defendant, in committing a Battery, \*\*\* knowingly caused bodily harm to [the victim], a person older than 60 years of age, in that he

repeatedly struck her about the face."

Thus, count VII of the indictment charged the defendant with knowingly causing the victim great bodily harm by breaking the victim's left arm while count VIII of the indictment charged defendant with aggravated battery by knowingly causing bodily harm to a victim over 60 years of age by repeatedly striking her about the face. All of these acts were alleged in count IV to be a basis of the murder indictment and were found to be a cause of the victim's death.

It is well settled in Illinois that multiple convictions must be vacated when they are based upon the same physical act. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844.) Since the acts alleged in count V of the indictment, charging rape, and counts VII and VIII, charging aggravated battery, were all found to be parts of the acts which precipitated the murder as charged in count IV of the indictment, the murder and the three other offenses are based upon the same physical acts. Consequently, the defendant's rape conviction, as charged in count V, and his aggravated-battery convictions, as charged in counts VII and VIII, must be vacated. (See *People v. Lerch* (1972), 52 Ill. 2d 78, 80-81, 284 N.E.2d 293, 294.) *People v. Wieland* (1984), 123 Ill. App. 3d 576, 462 N.E.2d 1256, is distinguishable because in the case at bar the murder charge is necessarily based upon the same physical acts as the offenses charged in counts V, VII and VIII of the indictment.

Since we have vacated the defendant's rape and aggravated-battery convictions, we need not address the sentencing issue.

For the foregoing reasons, the defendant's murder conviction is affirmed; his rape and aggravated-battery convictions are vacated.

Affirmed in part, vacated in part.

JONES and WELCH, JJ., concur.