THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LEE MILLER, Defendant-Appellant.

First District (1st Division)   No. 1—85—3703

Opinion filed March 20, 1989.—Modified on denial of rehearing
December 4, 1989.

982

Steven Clark, Michael J. Pelletier, and Debra R. Salinger, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley and Cecil A. Partee, State's Attorneys, of Chicago (Inge Fryklund, Catharine A. Forest, and Joseph G. Howard, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, Lee Miller was convicted of murder, robbery and burglary and sentenced to a term of natural life imprisonment. On appeal, he raises the following issues for review: (1) he was not proven guilty of robbery beyond a reasonable doubt; (2) the trial judge erred by denying his motion for a continuance; and (3) the State's failure to disclose incriminating statements allegedly made by the defendant violated his right to discovery and unfairly impeded his preparation for trial. We affirm the decision of the trial court.

The principal witness for the prosecution was Tamora Martin, who was a friend of the defendant. Tamora was addicted to heroin and had turned to prostitution to support her drug habit. In June of 1981 Tamora visited the apartment of Mr. Gall, an 81-year-old man, for the purpose of engaging in sexual activity with him. Mr. Gall, however, told her that he did not have sufficient funds to pay her for her services, so she left.

Several days later, Tamora revealed, during a conversation with the defendant, Timothy Gilbert, another friend, and Betty Moore, the mother of Tamora's boyfriend, that Mr. Gall was an elderly man who lived alone and had many valuable belongings in his apartment. The

defendant proposed a plan to rob Mr. Gall, suggesting that Tamora go to the apartment and leave the front door unlocked so that the defendant could sneak in, collect the valuables and leave. Initially, Tamora refused to participate in the robbery, but on July 9 she finally agreed to do so.

Tamora called Mr. Gall and asked him if she could come over that evening but was told no. She called him again the next morning, at which time she was told to come over at 9 p.m. that evening.

At approximately 8:30 p.m. that evening, Tamora met the defendant, Timothy Gilbert, and his girlfriend, Sandra Hubson, in front of Tamora's apartment. The foursome took Tamora's grandmother's car to Mr. Gall's apartment. They arrived at approximately 10 p.m. and parked one-half block from the apartment, at which point they reviewed the robbery plan.

Tamora went to Mr. Gall's apartment and went into the living room, which was located in the rear of the apartment. Mr. Gall offered her some refreshments, and she ate while he massaged her neck.

Fifteen or twenty minutes later, she told Mr. Gail that she had left her keys in the car and would be right back. She went downstairs and met the defendant in the courtyard of the building; he instructed her to go back to the apartment and to leave the door open. She went back to the building and rang Mr. Gall's apartment and placed a piece of paper in the security door so that the defendant could get in. Tamora, upon arriving back at the apartment, unlocked the door when Mr. Gall was not looking. She then accompanied him into the living room, where he once again began to massage her neck.

Approximately 10 minutes later, a loud noise from the front of the apartment startled both Mr. Gall and Tamora. The defendant entered, walked over to Mr. Gall and struck him in the face. Tamora told the defendant to stop, but he hit Mr. Gall a second and a third time, knocking him unconscious. The defendant continued to beat Mr. Gall, and Tamora ran downstairs and asked Timothy Gilbert to stop the defendant.

Gilbert went up to the apartment, and Tamora waited in the car. Approximately 10 minutes later, both the defendant and Gilbert returned to the car. They told her that Mr. Gall was all right but had to be tied up. They had taken $15 and a gold watch from Mr. Gall; the defendant, Gilbert and Tamora each kept $5.

They drove to a bar where Tamora called the police. She told them that her name was Julie Adams and that screams were emanating from an apartment at 7304 Ridge. Tamora then dropped Gilbert

off at the Apache Motel, where he lived with his girlfriend, and drove the defendant to his girlfriend's house. At that point, the defendant warned Tamora not to call the police because she would be blamed for the incident.

The next day, Tamora told Betty Moore, whom she knew to be a police "snitch," about the incident. Thereafter, she met with several police officers. Later, she turned herself into the police and admitted being involved in the incident.

At the time of defendant's trial, Tamora was also under indictment for robbery, burglary, home invasion and aggravated battery. She stated that in return for her testimony, the assistant State's Attorney had agreed to dismiss the home invasion, burglary and aggravated battery counts and to recommend a four-year sentence of probation for robbery.

Officer William Hougesen, a Chicago police officer, was called as a witness for the State, and he stated that on July 10, 1981, at approximately 11:20 p.m., he responded to a call at 7403 North Ridge. Officer Hougesen and his partner, Officer Judy Fells, entered the second-floor apartment and found Edward Gall lying on the floor. Mr. Gall, who appeared to have been severely beaten, was taken to St. Francis Hospital.

Chicago police detective Robert Mette also testified, and he said he was assigned to the investigation on July 12, 1981. He stated he had an evidence technician dust for fingerprints in the apartment. He further testified that Timothy Gilbert and Sandra Hubson were taken into custody first and that Tamora, Kenny Moore and Betty Moore later came into the station on their own.

The suspects were placed in separate rooms and interviewed. The defendant told Mette that he was with Tamora, Gilbert and Hubson in the Lake Hotel at the time of the robbery. Mette stated that a piece of paper with the victim's name on it was recovered from the defendant's wallet. At trial a Xerox copy of this paper was admitted into evidence because the original had been destroyed.

Detective Mette also interviewed Tamora, who told him in an oral statement that the defendant and Gilbert had planned the robbery. He then took a written statement from her in which she detailed the events of the robbery.

Edward Gall, Jr., the son of the victim, testified that when he had seen his father three days prior to the incident, his father had been in good health. When he saw his father on July 11, 1981, at approximately 12:30 a.m. in the emergency room at St. Francis Hospital, his face was swollen and heavily bruised with both eyes blackened. Mr.

Gall, Sr., was unable to speak, ingest food or drink and had to be fed intravenously. He had bruises on his chest, back, arms and wrists. His condition deteriorated daily, and he eventually lapsed into a coma and was placed on a respirator.

In late July, Mr. Gall was given a tracheotomy because he was unable to breathe. Shortly thereafter, he had brain surgery to relieve the pressure on his brain resulting from excessive bleeding. Mr. Gall died in the hospital on August 5, 1981.

Dr. Joann Richmond, a forensics pathologist, testified that she had performed an autopsy on Mr. Gall on August 6, 1981. There were large bruises on the face and chest of the body and various scars from the surgery. The victim had a broken jaw and fractured nose and had suffered four brain hemorrhages. She stated that Mr. Gall had died as a result of multiple injuries sustained in a beating. The court refused the State's request to introduce photographs of the victim into evidence, agreeing with the defense's objection of gruesomeness. The defense stipulated to the cause of death. The court refused to admit the photographs on the basis of the defense's objection.

The jury found the defendant guilty of murder, robbery and burglary. Defendant waived sentencing by the jury and allowed the judge to decide whether the death penalty should be imposed. The trial judge found the defendant eligible for the death penalty but found there were sufficient mitigating factors to reduce the sentence to natural life imprisonment.

The first issue raised on appeal is whether the trial court erred in refusing to grant defendant a continuance due to the fact that defense counsel had been tendered voluminous medical records the Friday before trial.

■ It is well settled that the granting of a continuance based upon defense counsel's lack of preparation rests within the discretion of the trial court and that the denial of such a continuance will not be disturbed absent an abuse of discretion. (*People v. McKay* (1985), 138 Ill. App. 3d 446, 454, 485 N.E.2d 1257.) The determination of whether the trial court abused its discretion must be considered in light of two factors: (1) the diligence shown on the part of the defendant; and (2) the extent that such a denial prejudiced the defendant in the preparation of his defense. *People v. Jefferson* (1976), 35 Ill. App. 3d 424, 426, 342 N.E.2d 185.

The record indicates that on Friday, October 4, 1985, the State tendered medical records to defense counsel. On Monday, October 7, 1985, defense counsel requested a continuance. Applying the *Jefferson* test to these facts, we do not believe that defense counsel exercised

due diligence or that the denial of the continuance here prevented the defendant from preparing his defense or prejudiced his rights. The defendant's counsel contended he did not have adequate time to review the records, to prepare and investigate a possible defense, or to investigate and interview witnesses concerning the victim's cause of death. However, as noted by the court, counsel had been the attorney of record since 1981. He had been on notice for over four years that approximately four weeks elapsed between the date of the incident and the date of the victim's death. He had been supplied with the names of the medical personnel involved with Mr. Gall's treatment and autopsy in 1982. He had ample opportunity during this time to investigate the victim's cause of death and to prepare a defense. Furthermore, defense counsel chose not to cross-examine Dr. Richmond, the forensic pathologist, and offered to stipulate to the cause of death. Consequently, we find that the trial court did not abuse its discretion by refusing to grant defendant a continuance.

Defendant also argues that the State's failure to provide defense counsel with a statement, allegedly made by the defendant to Tamora, resulted in the denial of due process and denied him a fair trial. Tamora testified at trial that a week or two before the incident involving her, she had a conversation with the defendant concerning Mr. Gall and the valuables he had in his apartment. When she was asked if the defendant said anything during this conversation, defense counsel objected and requested a sidebar. During the sidebar, defense counsel argued that the State had failed to disclose any statements made by the defendant to Tamora prior to the incident and requested that it be barred from evidence. Defendant claims that he was taken by surprise by this statement and that up to this point, he believed that Tamora had told the police that only Gilbert had planned the robbery.

■ Supreme Court Rule 412 requires that the State disclose "any written or recorded statements and the substances of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements." (87 Ill. 2d R. 412.) This provision encompasses not only formal statements made to the authorities, but also statements made to anyone that might have a bearing on the defendant's guilt or innocence, as it is designed to prevent surprise and prejudice to the accused. *People v. Orr* (1986), 149 Ill. App. 3d 348, 358-59, 500 N.E.2d 665.

The State contends that it complied with discovery when it tendered to defense counsel the police reports and statements made by the defendant. The State's answer to discovery stated that all memo-

randa reporting or summarizing statements made by witnesses were contained in the police reports. The police reports contained a summary which stated that the defendant was involved in the planning of the robbery.

Consequently, the State filed a motion to supplement the record on appeal with the police reports, pursuant to Supreme Court Rule 329.

■ First, as a preliminary matter, we address defendant's argument that our use of Supreme Court Rule 329 is inappropriate. Supreme Court Rule 329 permits the amendment of the record where there are material omissions or inaccuracies or if the record is otherwise insufficient to present fully and fairly the questions involved. 87 Ill. 2d R. 329; *People v. Span* (1987), 156 Ill. App. 3d 1046, 1053, 509 N.E.2d 1057. See also *People v. Petty* (1987), 160 Ill. App. 3d 207, 211-12, 513 N.E.2d 486.

Our supreme court in *People v. Chitwood* (1977), 67 Ill. 2d 443, 367 N.E.2d 1331, remarked that Rule 329 is a "very broad provision" and allowed amendment of the record to supply an omission therefrom. The court there stated:

> "Defendant points out that if Rule 329 is construed as allowing amendment of the record to show a waiver of jury trial, a threat is posed to the effective exercise of that constitutional right. On the other hand, we cannot disregard the fact that defendant's construction of the rule also creates a risk—namely, that a defendant who had in fact waived a jury may, following conviction and sentence, decide to repudiate his waiver and thus to obtain a retrial of his case." *Chitwood*, 67 Ill. 2d at 448.

■ In the case at bar, defendant argues that if we allow the State to supplement the record, we condone the State's attempt to litigate on appeal the question of whether counsel actually received the reports under the guise of Rule 329. We reject that argument. We conclude, like the *People v. Chitwood* court, that a defendant cannot now allege noncompliance with discovery and then seek to repudiate receipt of the very documentation which, if amended to this record, would "present fully and fairly the questions involved."

■ One of the objects of Rule 329 "is to allow the record on appeal to be amended to *** settle controversies as to whether the record on appeal accurately discloses what occurred at trial. It is designed to facilitate the amendment of the record on appeal. [Citation.]" *Petty*, 160 Ill. App. 3d at 211.

■ Further, we recognize that the police reports were not admissible at trial as substantive evidence. (*People v. Morris* (1978), 65 Ill.

App. 3d 155, 382 N.E.2d 383.) Nonetheless, the police reports are properly a part of the record on appeal where: (1) they were referred to in the State's answer to discovery filed on April 22, 1981; (2) the judge's notes from November 2, 1981, reflect that they were tendered to the defense in open court; (3) they were referred to during the trial proceedings to clarify the issue whether the defendant had prior notice of the oral statements he allegedly made to Tamora; and (4) they were used extensively during cross-examination of Officer Mette. See *People v. Brackett* (1986), 144 Ill. App. 3d 442, 446, 494 N.E.2d 610; *People v. Burnside* (1985), 133 Ill. App. 3d 453, 457, 478 N.E.2d 884.

■ Therefore, we believe that a reviewing court can allow, as here, amendment which is verified by documentation in the record, where such amendment supplies an omission in the record without impeaching or contradicting the contents thereof (*People v. Whitehead* (1980), 87 Ill. App. 3d 885, 889-90, 409 N.E.2d 358), and is not used for any evidentiary purpose, but only for the very limited and narrow purpose of settling the question of whether the record conforms to the truth. We conclude that it was necessary to add the police reports to the record for the questions presented on appeal to be fully and fairly decided. As a practical matter, such supplementation aids this court in complete consideration of the merits of the case on appeal. See *Petty*, 160 Ill. App. 3d 207.

■ However, we would be remiss if we did not address the defendant's argument that new evidence cannot be added on appeal. We agree with the defendant; and hence, we reinforce the long-established rule in this jurisdiction that our holding today in no way implies that Rule 329 may be used as a vehicle for introducing additional evidence into the record. (See *People v. Prather* (1977), 55 Ill. App. 3d 54, 370 N.E.2d 831.) But see *People v. France* (1987), 163 Ill. App. 3d 819, 516 N.E.2d 1036, where the court did not allow the State to supplement the record on appeal with photographs allegedly used in a photo identification because the issue was raised for the first time on appeal. However, we distinguish *People v. France* from the case at bar. The court there held that Rule 329 is not intended to add totally new material to a trial court record which already discloses accurately what occurred. Here, the State was not seeking to add new material to the record, and neither did the record clearly disclose what had occurred but for the amendment.

We now turn our attention to the question of whether the police reports are determinative of the issue whether the State complied with discovery in accordance with Rule 412. The essence of defendant's argument is that he was not tendered the contents—and hence

the substance—of inculpatory remarks allegedly made by him to Tamora during a conversation(s) between the two of them and Tim Gilbert, an individual also charged in the incident, but not a party to this appeal, a week or two before the incident. Defendant maintains that he was surprised by Tamora's testimony at trial and subsequently prejudiced by this purported discovery violation.

The State responds that the police reports adequately summarize the substance of defendant's statements, which satisfies the Rule 412 requirements (see *People v. Howard* (1984), 121 Ill. App. 3d 938, 460 N.E.2d 432), and that, at best, any error was harmless error because defendant suffered no prejudice, where Tamora was originally a codefendant in the matter, defendant had an opportunity to interview her prior to trial, and defendant was apprised of this same information in other written reports and in written statements obtained from Tamora and Gilbert.

The rationale behind pretrial discovery is to afford the defense an adequate opportunity to investigate and to alleviate untimely interruptions at trial occasioned by disclosures of statements first made at trial. (*People v. Moses* (1957), 11 Ill. 2d 84, 142 N.E.2d 1.) Additionally, Supreme Court Rule 412 was adopted to prevent surprise and prejudice to the accused. (*People v. Stewart* (1980), 84 Ill. App. 3d 855, 406 N.E.2d 53.) Thus, technical compliance may be excused where the defendant had access to the statements. See *People v. Sanders* (1974), 56 Ill. 2d 241, 252-53, 306 N.E.2d 865; *People v. Simms* (1976), 38 Ill. App. 3d 703, 348 N.E.2d 478. See also *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.

In the present case, the record demonstrates that the defendant received the felony review report and police report, which were tendered in open court and referred to extensively during cross-examination of Officer Mette, and that he received Tamora's written statement, part of which was read into the record at the request of the trial court. That part provides: "I went into the living room after Mr. Gall left [*sic*] into the apartment. I left the door unlocked so Lee Miller or Tim Gilbert could sneak into the apartment and steal some valuables out of the dining room china cabinet." Defendant argues that he had no knowledge that Tamora would testify that she had a conversation with him where they "planned" the robbery, nor did he have any prior notice of any conversations.

We find defendant's argument to be without merit. We agree with the trial judge's pronouncements that defendant had prior notice, the State complied with discovery, and the defendant was not surprised or prejudiced at trial. Tamora was a codefendant. The

defendant, along with Tamora and Gilbert, was indicted and charged with burglary, robbery, home invasion and aggravated battery. The defendant was also charged with murder. The State, during the course of discovery, revealed the substance of oral statements made by the defendant and codefendants. More importantly, even though the State did not disclose, as the trial judge remarked, "precise words," it did disclose Tamora's written statement which memorialized her oral statement wherein she stated the parties involved discussed "the planning" of the incident. Moreover, in addition to receiving the actual written statements, the police report corroborates the State's position that defendant had prior notice. The police reports referred to both Tamora's and Gilbert's statements which implicated the defendant and explained how the incident would transpire. Inherent in "planning" is either the existence of a written plan or a discussion of the plans. Here both Tamora and Gilbert admitted planning and committing the robbery in the company of defendant. Hence, we conclude that the substance of the oral statement or "plan" was previously furnished to defendant prior to Tamora's testimony at trial.

■■ Moreover, we believe that when the substance of a statement is contained in a police report that has been previously furnished to the defense pursuant to discovery, the purpose of the rule has been satisfied and no prejudice results from the withholding of another memorandum of the same statement. (*People v. Howard* (1984), 121 Ill. App. 3d 938, 948, 460 N.E.2d 432; *People v. Herrera* (1981), 96 Ill. App. 3d 851, 856, 422 N.E.2d 95.) Furthermore, when defense counsel first learned of the substance of the statement, he did not request a continuance in order to investigate the circumstances of the alleged statement. When a defendant fails to request a continuance for investigation of the alleged statement and instead proceeds to trial, he cannot complain of prejudice. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 175, 514 N.E.2d 970.) Therefore, the prosecution's failure to provide specific notice of the statement is not reversible error.

Finally, defendant maintains that he was not proven guilty of robbery beyond a reasonable doubt because the State failed to present any evidence that the defendant used violence on Mr. Gall to force him to part with his property.

■■ ■ A robbery occurs when a person takes property from the person or the presence of another by the use of force or by threatening the imminent use of force. (Ill. Rev. Stat. 1985, ch. 38, par. 18—1.) The evidence establishes that Tamora saw the defendant beating the victim in his apartment. She immediately ran to the car and asked Gilbert to go up and stop the defendant. Within 10 minutes, both the

defendant and Gilbert returned to the car. Gilbert said he had taken $15 out of Mr. Gall's pocket and stated, "This [was] all we got." This evidence is sufficient to establish that force preceded or was contemporaneous with the taking of the property (see *People v. Hepler* (1985), 132 Ill. App. 3d 705, 477 N.E.2d 768) and is sufficient to establish the defendant's guilt beyond a reasonable doubt.

For all of the above reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

QUINLAN and O'CONNOR, JJ., concur.